*In re* MARRIAGE OF JUDITH HENZLER, Petitioner and Counterrespondent-Appellee, and ALOYSIUS HENZLER, Respondent and Counterpetitioner-Appellant.

Fourth District   No. 4—84—0612

Opinion filed June 20, 1985.

Reino C. Lanto, Jr., of Waaler, Evans, Gordon & Lanto, of Rantoul, for appellant.

Burt Greaves, of Greaves, Lerner & Kirchner, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent appeals from the judgment of the circuit court of Champaign County on his petition to terminate or abate maintenance payments to his ex-wife. The circuit court denied the petition insofar as it proposed termination, but reduced maintenance from $1,000 per month to $750 per month. We reverse and remand.

The record shows that the parties were married on October 9, 1960. A judgment of dissolution was awarded on November 18, 1980, with the property distribution reserved. On January 26, 1981, the court ordered the respondent, a lieutenant colonel in the United States Air Force, to pay petitioner maintenance of $1,000 per month beginning January 1, 1981, stating:

> "13. Petitioner lacks sufficient property to provide for her reasonable needs and is presently unable to support herself through appropriate employment in the life style established during the marriage; therefore she should be awarded maintenance.

14. The court, having considered the factors provided in Section 504, chapter 40, I.R.S., finds that respondent should pay directly to petitioner *** as maintenance the sum of $1,000.00 per month beginning January 1, 1981. This amount is set in light of the relative circumstances of the parties, petitioner's intention to complete her undergraduate studies by January 1, 1983, and the tax consequences to the parties. To the extent that petitioner's present expenses are not fully met by this award, petitioner will have to reduce expenses, obtain part-time employment, secure student loans, grants or scholarships, or take in a roommate to share in the housing costs. The amount also reflects the fact that respondent is to contribute substantially to the education expenses of their daughter.

15. The foregoing maintenance is provided to permit petitioner to acquire marketable job skills and become self-supporting. Although no limited period is presently set; the court anticipates that circumstances are likely to change permitting the court to reconsider maintenance in the future. Notwithstanding the apparent policy of the Marriage and Dissolution of Marriage Act to use maintenance as sparingly as possible, providing alternatives where possible through marital property division, and to free the parties of financial ties as well as marital ties, the court here finds that the marital property is insufficient to provide for petitioner in her period of economic rehabilitation and that the future is too uncertain to justify establishing a finite period for maintenance."

The court found that the parties owned no nonmarital property, and that the marital property should be divided substantially equally. As a result, the respondent's military credit union account, valued in the range of $17,000, less $6,600 awarded to petitioner, was to be distributed equally between the parties after the payment of capital gains tax liability arising from the sale of their Maryland house. Respondent was awarded a checking account valued at $2,300 to $2,815.65; savings bonds of the parties valued between $800 and $1,705; and a 1977 El Camino with a $1,400 debt thereon. The petitioner was awarded a credit union account valued at $943; a checking account valued at $83 and a 1974 Toyota. Each party was awarded the life insurance policies on his life. Respondent was ordered to contribute to the educational expenses of the parties' daughter in accordance with his agreement. The court's order further listed an apportionment of respondent's military retirement benefits, subsequently modified in an amended judgment of dissolution on December 14, 1981.

On December 15, 1982, respondent filed a petition for modification of maintenance, stating his belief that petitioner had completed a degree in accounting at Michigan State University and had, therefore, acquired marketable job skills necessary for self-sufficiency and economic rehabilitation. According to her affidavit, petitioner graduated from Michigan State University with a degree in accounting in March 1983, and scheduled herself to take the CPA exam in May 1983. Respondent's petition for modification was denied after hearing on June 10, 1983.

On April 25, 1984, respondent filed the instant petition to terminate or abate maintenance, stating that petitioner had obtained a college degree in accounting, acquired marketable skills enabling her self-sufficiency, and was gainfully employed at a salary of $17,500 per year.

At a hearing on July 6, 1984, the petitioner testified that she had been employed as an accountant with an investment firm since September 1983. She started at an annual salary of $17,500, which was raised after six months to an annual gross salary of $20,000. She testified that she bought a townhouse residence in Phoenix, Arizona, in December 1983, for $59,000. She listed her monthly living expenses related thereto by affidavit as including: $485, mortgage payments; $60, mandatory Townhouse Association Fee; and $65, home maintenance (repairs). She further listed $60 per month on auto operation, and $90 per month on auto repairs; but also included $250 per month as estimated auto payments to replace her 1979 Dodge auto, which she valued at $2,500. Petitioner testified that she owed $4,000 for extensive bunion surgery, which she now found the medical insurance for her firm did not cover. She therefore listed $125 per month on her affidavit as a medical expense. Her affidavit listed $2,217 per month in total expenses, with an earned gross income of $1,666.67, and maintenance from her ex-husband at $1,000 (taxable as income to her). Her other assets included a $500 checking account, a $3,000 IRA, a $900 savings account, a $30 savings account, a $3,500 CD, her car, and townhouse ($55,000). She stated that she was not presently able to make the $100 per month contribution to savings, or the $166 contribution to the IRA, as shown on her affidavit as monthly expenses. At the time of the hearing, she was planning to take the CPA exam again in November. She acknowledged that at the time of the dissolution, when awarded about $12,000, she had been unemployed and had no outside income.

Respondent testified that he was presently stationed with the Air Force in Germany. He said that at the time of the dissolution, petitioner had been about two years short of her college degree. In addition to paying petitioner maintenance, he had voluntarily funded the

college expenses of the parties' daughter in the amount of about $8,000 per year. Their daughter graduated from college in June 1983, and had since married. He stated that his gross income was about $39,000 per year; and that he also received military allowances (not taxable) of about $500 per month—about $28,300 yearly income after deducting the $12,000 (yearly) in maintenance payments to petitioner. Respondent testified that he had been in the service for 26 years, and expected to have to replace or make substantial repairs on the 1977 El Camino he had shipped to Germany, and the 1973 Opel he purchased for transportation until the El Camino arrived. He also wanted to begin preparing for retirement by attending collage at night. Respondent listed as assets on his affidavit a checking account of $1,077.35, U.S. Savings Bonds of $275, the two autos, used furniture, and the cash value of his life insurance, $6,680.

As this court stated in *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 634-35, 450 N.E.2d 1229, 1234, it is inherent in the concept of rehabilitative maintenance under the Illinois Marriage and Dissolution of Marriage Act (Act) (see Ill. Rev. Stat. 1983, ch. 40, par. 504) that the ex-spouse awarded maintenance is under an affirmative obligation to seek appropriate training and skills to become financially independent in the future. As stated in the comments to section 504:

> "Traditionally, alimony was considered a statutory right to the allowance of money for support and maintenance in installments at regular intervals for an indefinite period of time. *** Moreover, in the past, criteria for awards of alimony were not statutorily codified, with the result that decisional law developed randomly. Section 504 now establishes governing criteria to guide the court in the exercise of its discretion. *** Also, this section adopts the concept of 'rehabilitative maintenance' in accord with developing national doctrine. This concept, which is designed to encourage and assist dependent spouses in becoming financially independent, reflects the changing socio-economic patterns in our society." (Ill. Ann. Stat., ch. 40, par. 504, Historical & Practice Notes, 524-25 (Smith-Hurd 1980).) "The amount and duration of such maintenance should be determined by reference to what is necessary to obviate marriage-conditioned needs and to enable a formerly dependent spouse to acquire financial independence for the future." Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical & Practice Notes, at 529 (Smith-Hurd 1980).

■ A petition for termination or abatement of maintenance is considered under section 510 of the Act. (See Ill. Rev. Stat. 1983, ch. 40, par. 510.) The party seeking modification of provisions of maintenance

must show that there has been a substantial change in circumstances since the entry of the judgment providing therefor. (Ill. Ann. Stat., ch. 40, par. 510(a), Historical & Practice Notes, at 698 (Smith-Hurd 1980).) The factors to be considered in making an award of maintenance (see Ill. Rev. Stat. 1983, ch. 40, par. 504) are applicable to modification proceedings. Section 510(a), however, introduced factors to be considered in the modification proceedings which did not exist under the prior law. For example, based on section 504, a party may seek modification of a maintenance award *if there is a change in the recipient's ability to support himself.* (Emphasis added.) Ill. Ann. Stat., ch. 40, par. 510(a), Historical & Practice Notes, at 699 (Smith-Hurd 1980).

■ We note that by affidavit of December 16, 1980, petitioner showed respondent's monthly gross income as $3,256.28, with three dependents, one a daughter in college. The record shows that as of June 1984, his gross base pay was $3,396.60 per month. The fact that the respondent no longer has to contribute to the educational expenses of the parties' daughter, as emphasized by the petitioner on appeal, does leave the respondent with a greater disposable income. This is not the focus, however, for considering the respondent's petition. The petitioner has come from being unemployed with no outside income at the time of the dissolution, to having completed her college education in accounting, and obtained employment with earnings of $20,000 per year.

■ Generally, the alteration of an order of maintenance payments rests within the sound discretion of the trial court and, unless the record shows an abuse of this discretion, such an order will not be disturbed on review. (*Hoover v. Hoover* (1940), 307 Ill. App. 590, 30 N.E.2d 940.) On the facts of this case, we find that the petition for termination should have been granted. We reverse, not on the basis of the amount of the reduction in maintenance payments constituting an abuse of discretion, but because we conclude that the statutory goal of rehabilitative maintenance has been achieved. The respondent has evidently been making the ordered maintenance payments since January 1, 1981; in terms of the comments to section 504(b)(2) of the Act, we conclude that the payments through the date of the petition herein ought to have obviated any "marriage-conditioned needs," in view of the dissolution in November 1980.

Reversed and remanded.

WEBBER and MILLS, JJ., concur.