*In re* MARRIAGE OF MARY ELLEN GEIS, Plaintiff-Appellee, and W. PETER GEIS, Defendant-Appellant.

First District (3rd Division)  No. 86—0355

Opinion filed August 19, 1987.

976

Ben Goldwater, of Chicago, for appellant.

Rolewick & McKillip, P.C., of Wheaton (David F. Rolewick & Thomas G. Kenny, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

On January 4, 1980, a judgment was entered in the circuit court of Cook County dissolving the marriage of plaintiff-wife and defendant-husband. Incorporated into the judgment was a marital settlement agreement dated December 14, 1979. This appeal arises from a post-judgment petition for modification of support filed by plaintiff on June 9, 1983, and from a post-judgment petition for modification of maintenance and support filed by defendant on August 29, 1983.

Defendant appeals the trial court's January 16, 1986, written order denying his petition for modification of maintenance and child support and allowing plaintiff's petition for modification. The January 16, 1986, order incorporated oral findings made by the court on September 20, 1985. The trial court's order increased the sum of unallocated maintenance and child support required to be paid by defendant from $3,333.33 per month to $4,166.66 per month, and directed defendant to pay the increased sum retroactively from the date of filing of plaintiff's petition. Defendant also appeals the portion of the court order which directed defendant to pay to plaintiff's attorneys the sum of $5,500 of a total award of attorney fees and costs granted to plaintiff's counsel in the amount of $7,200.

On appeal defendant makes the following contentions: (1) the trial court's findings were erroneous and contrary to the manifest weight of the evidence; (2) the trial court erred in failing to consider defendant's contractual obligation under the judgment for dissolution of marriage to pay the college expenses of his children; (3) the trial court abused its discretion in ordering a retroactive increase in unallocated

maintenance and child support to June 1983; and (4) the trial court abused its discretion in ordering defendant to pay more than 75% of plaintiff's attorney fees.

For the reasons stated below, we affirm the portions of the trial court's order which granted an increase in unallocated maintenance and support and made the award retroactive to the date of the filing of plaintiff's petition, and reverse the portion of the order which directed defendant to pay a part of plaintiff's attorney fees.

The parties were married on September 7, 1963, in River Forest, Illinois. Seven children were born of the marriage, namely, Geoffrey, born in 1964; Michelle, born in 1965; Pamela, born in 1966; Jennifer, born in 1968; Amy, born in 1969; Peter, born in 1971; and Colleen, born in 1975.

Pursuant to the terms of the settlement agreement plaintiff was granted custody of the seven minor children. Defendant was required, *inter alia,* to pay to plaintiff $40,000 per year ($3,333.33 per month) in unallocated family support, and, within his financial ability to do so, to pay the costs and expenses for a four-year university education for each child. Plaintiff was granted ownership of the marital residence, while defendant was granted ownership of a summer home in Wisconsin and a condominium in Florida. Additionally, a provision in the agreement directed that any income earned by plaintiff after the judgment would not comprise a ground for an application by defendant to reduce unallocated support.

Hearings on the parties' petitions began on April 30, 1985. At the time of the hearings, three children had reached majority. Two were enrolled at a college or university. Defendant was 42 years old and employed as a surgeon and director of surgical education at Lutheran General Hospital. At the time of judgment, defendant's gross annual income was $104,000 and his net take-home pay was $47,175. Defendant's net earnings in 1985 were $6,346.85 per month ($76,162.20 annually), and had remained substantially the same since March 1983. His gross annual income was $170,163 in 1983 and $198,088 in 1984.

It is undisputed that defendant had made all payments required to be made by him pursuant to the original judgment for dissolution. On appeal defendant alleges that he has been incurring educational expenses in the amount of $31,460 per year for the three oldest children. Additionally, he pays $1,800 per year for the parochial school tuition of the parties' daughter Jennifer.

Defendant's assets as of June 1985 included $32,548.50 in a Kemper Money Market account and $7,768 in a First Chicago account. He held a 100% interest in Professional Enterprises, an Illinois corpora-

tion which had cash accounts of $3,000. Defendant was the sole owner of Philos Enterprises, which owned two Cadillac and three Corvette automobiles, and had an account at Riverside National Bank with a balance of $5,946.88. He held the sole interest in the Illinois corporation of W. P. Geis, M.D., S.C., which owned a money market fund at Riverside National Bank with a balance of $15,000. Defendant's checking account balance was about $2,000.

Since the entry of the judgment of dissolution, defendant had acquired interests valued at $17,000 in two condominiums, a 54% interest valued at $36,200 in a partnership which owned three condominiums, and an interest valued at $15,000 in Park City Investments, a limited partnership. He also acquired a one-third interest valued at $12,000 in a 30-foot sloop sailboat and a one-half interest in a 30-foot racing sailboat which was purchased for $44,000. Defendant's monthly expenditures on the Wisconsin property he owned pursuant to the judgment for dissolution totaled $989.47 and his payments on the Florida property he owned pursuant to the judgment were $1,006.25. Defendant received little or no income from these properties. The kitchen in the Wisconsin home had been vandalized in 1982, which vandalism, according to defendant, rendered the property unrentable. Also in 1982, the condominium association established a rule which prohibited the leasing of the Florida townhouse.

Plaintiff testified at the hearings that she was 42 years old and in good health. She was unemployed at the time of the judgment. In 1983 she worked part-time as a secretary at a school. In May 1984 she became a real estate sales associate, as a result of which she had gross earnings of $1,850 in 1984 and $14,375.90 as of July 12, 1985. On the date of the entry of the judgment, plaintiff's sole debt was a mortgage on the marital home. On the date of trial, plaintiff owed $35,000 on the home mortgage, $8,000 on an automobile, $1,387 on a MasterCard, $120 to Carson Pirie Scott, and $12,000 to the Internal Revenue Service for 1984 income taxes. Plaintiff also had borrowed $2,048 from her brothers and $13,500 from the Northern Trust Bank.

In April 1984 plaintiff sold the 12- to 13-room marital home for $217,500. Plaintiff used the sale proceeds to repay the debts to her brothers and the Northern Trust Bank, and she placed down $100,000 on a nine-room home she purchased for $135,200. She also purchased a refrigerator, bookcase, hide-a-bed, and armoire. Plaintiff testified that the new home needed light fixtures, tuckpointing, a new garage door, electrical circuitry, and roof repairs. In addition to the home and equity of $2,000 in an automobile, plaintiffs' assets at the time of trial consisted of $71 in a checking account, $2,589 in a savings account,

$5,000 in municipal bonds, an IRA with a balance of $2,500, and furniture and furnishings. As a result of the real estate transaction, plaintiff reduced her monthly home mortgage payment, including principal, interest, and real estate taxes, from $900 per month to $481.91 per month.

Plaintiff testified that since the dissolution she has reduced the quality of the purchases she makes. Instead of buying steak and roast beef, she buys something less expensive. The family now dines out several times per year, whereas prior to the judgment they dined out several times per month. Plaintiff purchases lower quality clothing for the children, and spends about $110.31 per month for the children's clothing. Since the entry of the judgment, the only clothing plaintiff purchased for herself were two sweaters. Plaintiff no longer gives the children allowances, and stated that she has been unable to save money for a vacation for herself. She admitted, however, that she took a 19-day European vacation in June and July 1985. Between 1980 and June 1985, she took only two weekend vacations.

Plaintiff introduced copies of the January 1980 and February 1985 Official Consumer Price Indices, which showed an increase of about 37% during those years. Plaintiff admitted, however, that her utility bills had not increased by 37% during those years, and that her gas bills for each of the prior years of 1980, 1982, and 1983 exceeded her current (1985) expense. The monthly family needs at the time of judgment were $2,883.02. Plaintiff executed an expense affidavit which indicated that at the time of trial the family needs amounted to $3,933.68. Six of the seven children were living at home at the time of trial. Geoffrey was attending college in Boston but lived at home during vacations and school breaks.

The administrator of defendant's medical group, Dr. Donald M. Michaels, testified that he anticipated that defendant's contract with the group would be renewed in March 1986, with a reduction in salary from $105,000 to $60,000. Both parties also called accounting experts to testify to the effects on the parties of any changes in the maintenance and support awards.

I

Defendant initially contends on appeal that the trial court's findings that a substantial change in circumstances occurred since entry of the judgment, that an increase in family needs was shown, and that defendant was able to meet an increase in support, were erroneous and contrary to the manifest weight of the evidence. Defendant contends that plaintiff's petition for an increase in support should

have been denied and all maintenance terminated.

Specifically, defendant contends that the trial court erred in considering that only two of the parties' children had reached majority at the time of the hearings when in fact three had. Defendant asserts that he properly petitioned the court for a reduction in unallocated maintenance, since a party cannot unilaterally reduce an unallocated support award. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 329.) Defendant further contends that the attainment of majority or the emancipation of one or more of the children is a substantial change of circumstances justifying a reduction of support.

Additionally, defendant contends that the trial court erred in finding that since defendant's contractual obligation to pay college expenses was qualified with the words "within his financial ability to do so," that child support and maintenance take priority over college costs. Defendant suggests that no such priority should be read into the settlement agreement. Defendant notes that the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) condones the payment of educational expenses beyond the emancipation of a child. (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 504.) Defendant cites *In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 432 N.E.2d 958, for the proposition that such educational expenses should be considered by the court when it determines maintenance awards.

Defendant notes that the trial court found that, according to the statute, unallocated maintenance and child support should be increased to $53,923.65 per year. We note that this sum represents 55% of defendant's 1984 net income of $98,043. That percentage figure is set forth by statute to apply to payments to be made by a supporting spouse where there are six or more children. (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 504, 505.) The trial court noted the statutory amount, and then took into account defendant's payment of college expenses. Accordingly, the trial court reduced the sum to be paid by defendant in unallocated maintenance and child support from $53,923.65 to $50,000. Defendant contends that in view of his yearly payment of $34,000 in total educational expenses, including $31,000 in college expenses, the reduction by only $3,900 in consideration of the payment of college costs is against the manifest weight of the evidence.

Regarding family expenses defendant alleges that the trial court disregarded the impeachment of plaintiff's testimony, where plaintiff admitted that some of the expenses stated on the family expense affidavit, such as loan payments, prom dresses, class rings and attorney fees, were not recurring expenses and were nonexistent at the time

of the hearings. Defendant also notes that plaintiff had repaid all outstanding loans and had reduced monthly home mortgage payments from $900 to $482.

■■ Further, defendant asserts that the 37% increase in the Cost of Living Index affected him as well as plaintiff. Inflation alone has been held insufficient to show a material change of circumstances justifying an increase in child support since it affects both parties. (*Addington v. Addington* (1977), 48 Ill. App. 3d 859, 863, 363 N.E.2d 151, 154.) The fact that the children grow older similarly is insufficient. (48 Ill. App. 3d 859, 363 N.E.2d 151.) Defendant also asserts that the record fails to indicate that plaintiff's expenses increased by 37% or that the children or plaintiff do not eat properly or are improperly clothed.

Regarding his own expenses, defendant points to the trial court's finding that he has "disposable income that is very close to what his actual expenses are," and the court's comment that defendant might view this situation as a "dismal financial picture." Defendant also asserts that the post-judgment changes in the Wisconsin and Florida real estate he held which rendered the properties unprofitable were outside his control. Defendant asserts that his retention of the two properties reduces his taxes. Further, defendant asserts that since plaintiff is financially self-sufficient, maintenance should have been terminated. Ill. Rev. Stat., 1984 Supp., ch. 40, par. 504(b)(2); *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 298, 426 N.E.2d 1066, 1069.

Defendant also cites *In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147, in which the appellate court reversed the trial court's denial of the husband's petition to terminate maintenance where the wife was earning $20,000 per year when the petition was filed and where she had been unemployed at the time of the entry of judgment. The appellate court reversed, not because the trial court's reduction in maintenance payments was an abuse of discretion, but rather because the statutory goal of rehabilitative maintenance had been achieved. (134 Ill. App. 3d 318, 323, 480 N.E.2d 147, 150; Ill. Rev. Stat. 1983, ch. 40, par. 504.) Defendant analogizes *Henzler* to the instant case, where plaintiff, who was unemployed at the time of dissolution, had projected 1985 earnings of $24,000 at the time of the hearings on the petitions.

In response plaintiff asserts that the trial court properly exercised its discretion in denying defendant's petition for modification. First, defendant failed to meet his burden of proving how and to what extent the attainment of majority by three of the seven children de-

creased the needs of plaintiff. (*Baker v. Baker* (1977), 53 Ill. App. 3d 186, 368 N.E.2d 379.) Plaintiff asserts that while the general rule is that child support terminates when a child reaches majority (*In re Marriage of Pauley* (1982), 104 Ill. App. 3d 100, 432 N.E.2d 661), a maintenance and support award which does not designate a specific sum for child support may not be reduced *pro rata* as each child reaches majority (*Baker v. Baker* (1977), 53 Ill. App. 3d 186, 191-92, 368 N.E.2d 379, 383). Plaintiff points to *Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 424 N.E.2d 714, in which a showing of the attainment of majority of the parties' only child was held insufficient to establish entitlement to such a reduction.

Plaintiff also asserts that on the date the petition was filed, only two of the parties' children, and not three, had attained 18 years. Further, to the extent that defendant agreed to contribute to the children's college education costs, he also agreed to contribute to the maintenance and reasonable living expenses of the children through graduation from college, whether the children live on campus or at home. *In re Marriage of Pauley* (1982), 104 Ill. App. 3d 100, 105, 432 N.E.2d 661, 665.

Plaintiff contends that the trial court was not required to consider payments made by defendant for the college education of the children in determining defendant's ability to pay unallocated maintenance and support since defendant's obligation to pay for college education was expressly conditioned on his financial ability. Plaintiff distinguishes *In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 432 N.E.2d 958, cited by defendant. Plaintiff correctly notes that *Belluomini* holds not that a trial court *must* consider educational expenses, but rather held that it is not an abuse of discretion for a court to consider educational expenses, when determining the amount of unallocated maintenance.

Further, plaintiff notes that section 513(c) of the Marriage Act requires the court to consider the financial resources of the child in determining the amount of support for educational expenses. Plaintiff asserts that defendant erroneously assumes an obligation on his part to pay 100% of the college expenses. Plaintiff notes that the trial court specifically found that there was no reason why the children could not contribute to paying for their education by obtaining student loans.

Additionally, plaintiff asserts that the trial court properly found that defendant's ability to pay support had not decreased, as his net income was at least sufficient to pay his expenses. Finally, plaintiff asserts that defendant's own admission that he had never missed a sup-

port payment demonstrates his ability to make the payments.

In reply defendant asserts that, in accord with the trial court's recommendation, defendant attempted to obtain financial aid to assist him in the payment of college costs. The record indicates, however, that, when asked, plaintiff refused to cooperate in completing financial aid forms for the parties' oldest son, Geoffrey. Finally, defendant asserts that since Geoffrey no longer resides with plaintiff while he attends college, and the costs for his attendance at college are borne by defendant, plaintiff's costs thereby have been reduced. *Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 424 N.E.2d 714.

■ We find that the trial court acted within its discretion in granting plaintiff's petition for an increase in maintenance and denying defendant's petition for a reduction in maintenance and support. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447; *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066.) Defendant failed to show a decrease in his ability to pay maintenance and support or a substantial change in circumstances to justify reduction of the maintenance and support award. Plaintiff, on the other hand, met her burden of showing that monthly family expenses had increased, from $2,883 at the entry of judgment to $3,934 at the time of trial. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) Additionally, the evidence shows that while defendant's net income did not increase substantially during that time, nevertheless defendant's disposable income was sufficient to meet his own personal expenses and the expenses of the children. Additionally, defendant acquired assets in the form of money market accounts valued at $34,000, and interests in real estate, boats, and automobiles. The accumulation of these assets, in addition to his steady yearly net income, provided defendant with an increased ability to pay. Defendant has the financial ability to meet the increase in maintenance and child support from $40,000 to $50,000 per year.

We note that *In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147, relied on by defendant, is distinguishable from the instant case. In *Henzler*, the appellate court reversed the trial court's denial of respondent's petition for termination of maintenance payments where the petitioner, who was unemployed at the time of dissolution, had since obtained employment with earnings of $20,000 per year. *Henzler* is distinguishable since the settlement agreement in that case expressly stated that maintenance was being provided only so long as it would be necessary to allow the petitioner to become self-supporting. Further, the award in *Henzler* was only for maintenance, and not maintenance and child support, as in the instant case.

In the instant case the court was required to consider maintenance for the spouse and support for seven children.

Further, the record in the instant case shows that the trial court did consider the $34,000 in educational expenses incurred by defendant in ordering the increased maintenance award, as it reduced the amount which would be awarded under the statute (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 504(b)(7), 505(a)(5)) by about $3,900. While the amount of the reduction does not meet the actual educational expenses of defendant, the trial court's finding does reflect an accurate interpretation of the marital settlement agreement. The agreement provided that defendant first pay unallocated maintenance and child support, and then, as he was financially able, to pay educational expenses. Therefore, the trial court properly read into the agreement the priority that maintenance and child support took over educational expenses.

The trial court also considered plaintiff's income as a real estate sales associate, along with the other evidence presented at trial, with regard to her petition for an increase in maintenance. (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 504(b)(1), 505(a)(2).) Specifically, the court found, based on expert testimony, that plaintiff's projected disposable income for 1985 was $48,000. Plaintiff indicated monthly family expenses of about $4,000 (amounting to $48,000 annually), and additionally provided evidence that the standard of living she and the children enjoyed had been reduced since entry of the judgment. (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 504(b)(3), 505(a)(3).) The court also found that while plaintiff reduced her monthly home mortgage by purchasing a smaller home, the new home required some major repairs. The court properly considered both plaintiff's income and expenses in determining that she proved increased family needs.

■ We also find that the absence of a specific finding by the trial court regarding any reduction in family expenses as a result of the oldest child or children living away from home while attending college is not fatal. Further, the court did not err in looking to the date of filing of plaintiff's petition to determine that the number of children that had reached majority, for purposes of its calculations, was two. In any event, it can reasonably be inferred that the settlement agreement anticipated the attainment of majority by the children. The trial court's conclusions are supported by the manifest weight of the evidence. The record shows that the court took into account the parties' incomes and assets, personal and family expenses, and also the tax consequences of an increase in the support and maintenance award (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 504(b), 505(a)), in denying

defendant's petition and granting plaintiff's petition.

## II

■ Second, defendant contends that the trial court erred, when it increased the maintenance and support award, in failing to consider defendant's contractual obligation under the judgment for dissolution to pay college expenses. The trial court recognized that defendant's disposable income was being expended in actual expenses. Defendant asserts that he will be able to meet the increased award payments only by taking money from educational expense funds. If he is caused to reduce or terminate his payment of educational expenses for his children, defendant asserts, then he will be in breach of the settlement agreement and judgment for dissolution and thus will subject himself to potential further litigation. Ill. Rev. Stat. 1983, ch. 40, par. 502(e).

In response, plaintiff asserts that the trial court properly exercised its discretion in granting plaintiff's petition for modification. Plaintiff met her burden of showing that the needs of the family had increased and defendant's ability to pay support had substantially increased. (*In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 426 N.E.2d 246.) Plaintiff notes that defendant's gross income increased from $104,000 at the time of judgment to $170,163 when the petition for modification was filed. Plaintiff suggests that the courts consider the gross income of the supporting spouse as a significant factor in determining whether an increased ability to pay has been shown. *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221; *In re Marriage of Helfrich* (1981), 101 Ill. App. 3d 1070, 428 N.E.2d 1149.

Plaintiff further maintains that she proved increased family needs. She was unable to maintain the children according to the standard they would have enjoyed had the marriage not been dissolved. That is, she needed to sell the old family home to purchase a smaller home, she was unable to purchase new furniture or clothing for herself, and was buying lower quality food and not dining out with the family as often as before the dissolution. Plaintiff also proved increased family expenses. The trial court noted that the $146.76 per month that plaintiff has allotted for clothing for the children is "an extremely small amount." Plaintiff asserts that while some of the expenses cited in her affidavit may not have been "ongoing," nevertheless they were actual expenses the family incurred after the filing of the petition.

Further, plaintiff asserts that the children are in need relative to the "luxurious" standard of living being enjoyed by defendant, who

took several week-long vacations in 1984, owned two sailboats and interests in several automobiles. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 297-98.) Further, plaintiff cites *Addington v. Addington* (1977), 48 Ill. App. 3d 859, 363 N.E.2d 151, which held that where a defendant's increased ability to pay has been shown, inflation and the fact that the children have grown older may form a proper basis for establishing increased need.

In reply defendant asserts that plaintiff is able to avoid the cost of clothing for herself since she receives all of her clothes and shoes from a friend. Defendant notes that plaintiff was able to afford a 19-day European vacation after entry of the judgment. Defendant correctly points out that the Marriage Act dictates that the courts look not to *gross* income, as plaintiff suggests, but rather to *net* income of the supporting spouse in determining increased ability to pay. (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 505(a)(1), (a)(3).) Defendant notes that *In re Marriage of Helfrich* (1981), 101 Ill. App. 3d 1070, 428 N.E.2d 1149, cited by plaintiff, involved a dispute between the parties regarding whether the supporting spouse's net income had increased since the date of judgment. In *Helfrich* the court received evidence regarding gross income only insofar as it might aid in the determination of whether net income had increased. (101 Ill. App. 3d 1070, 1072-73, 428 N.E.2d 1149, 1151.) That is, it may be helpful for the courts to look to gross income as a starting point in determining the spouse's net income. 101 Ill. App. 3d 1070, 428 N.E.2d 1149; *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221.

We find no error by the trial court. Under the terms of the judgment defendant is required to pay college expenses only to the extent that he is financially able to do so, after payment of maintenance and support. We previously found that plaintiff showed increased family needs and an increased ability of defendant to pay maintenance and support. We recognize that the effect of the subject provision in the judgment may be to require defendant to re-evaluate his financial situation, and possibly to re-allocate some of the funds he has been expending on items not related to his family support obligations, in order to meet the increased award. That there would be a resulting effect on his ability to pay all of the college expenses of his children would not necessarily place defendant in breach of the judgment.

### III

■ Third, defendant asserts that the trial court abused its discretion in ordering that the increased award be made retroactive to June 1983. Defendant maintains that the funds in his money market ac-

counts were nominal in view of his ongoing expenses. Defendant asserts that the payment of the retroactive increase would "totally deplete" his liquid assets and leave him in a financially precarious situation with regard to the educational expenses to be borne by him. Further, the record fails to indicate that the delay between the filings of the petitions in June and August 1983 and the hearings begun in April 1985 was caused by defendant or resulted in any debts or other financial obligations on the part of plaintiff.

Plaintiff responds that the retroactive modification is proper in light of the substantial imbalance which existed on the date the petition was filed between the family needs and defendant's ability to pay. The trial court acted within its discretion in modifying retroactively the support obligation to the date of filing of the modification petition. (*In re Marriage of Leva* (1983), 125 Ill. App. 3d 55, 460 N.E.2d 1179.) Plaintiff notes that *Leva* provides that "there is some delay in disposing of post-decree petitions inherent in the judicial process." (125 Ill. App. 3d 55, 57, 460 N.E.2d 1179, 1181.) Further, plaintiff cites *Green v. Green* (1974), 21 Ill. App. 3d 396, 35 N.E.2d 324, which held that a modification should have been ordered as of the date on which the petition was filed because it found that the changed circumstances justifying the modification existed as of the filing date.

In replying defendant correctly distinguishes *In re Marriage of Leva* (1983), 125 Ill. App. 3d 55, 460 N.E.2d 1179, from the instant case. In *Leva*, the appellate court directed that a support order be made retroactive five additional months, where evidence showed that the supporting spouse's wilful failure to comply with petitioner's discovery requests caused a five-month delay. In the instant case, there was no such wilful conduct. The court in *Leva* attributed the remaining seven or more months' delay between the filing of the petition and the court's decision to the delay "inherent in the judicial process."

We find that the trial court acted within its discretion in ordering an increase in the support and maintenance award retroactive to June 1983. On a proper showing of changed conditions a party is entitled to a modification from the date of his petition. (*Harner v. Harner* (1982), 105 Ill. App. 3d 430, 434 N.E.2d 465; *Green v. Green* (1974), 21 Ill. App. 3d 396, 315 N.E.2d 324.) The delay in the instant case from the time plaintiff's petition was filed to the start of the hearings was nearly two years, which we acknowledge is an extended period of time. In the absence of evidence to the contrary, however, we attribute the delay to the routine judicial process.

We note that the changed circumstances shown by plaintiff were

calculated from the time of judgment to 1985, well after the petitions were filed. However, we find sufficient evidence to support an increase in maintenance dating back even to June 1983, since defendant's net income had increased by then, since defendant had begun to acquire assets, and since the needs of the children had increased by that time.

## IV

■ Finally, defendant contends that the trial court abused its discretion in ordering defendant to pay more than 75% of plaintiff's attorney fees. Defendant does not challenge the court's authority to assess the legal fees or the amount of fees allowed to plaintiff's attorneys, but rather challenges the portion of the fees that he was ordered to pay, that is, $5,500 of the $7,200 award. Defendant contends that the court's findings and order directing him to pay increased unallocated maintenance and child support and making the increase retroactive to June 1983 effectively disposed of substantially all of defendant's liquid assets. Defendant further asserts that plaintiff would be in a better financial position than defendant to pay her own legal fees. Defendant maintains that there was no showing by plaintiff of her inability to pay, and asserts that the court should have found that defendant lacked the ability to pay.

Plaintiff responds that there was no abuse of discretion. Plaintiff cites *In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 436 N.E.2d 573, in which the court stated that if disbursement of a petitioner's funds for the payment of attorney fees would exhaust her own estate or strip her of a means of support and undermine her economic stability, then she was entitled to an award of fees. Plaintiff contends that she established her inability to pay attorney fees, and that payment of the entire amount of fees would deplete her estate. Plaintiff asserts that defendant's gross income of almost $200,000 per year was sufficient to pay $5,500 of plaintiff's attorney fees. Plaintiff also notes that the trial court found, at the start of the hearing on the petition for attorney fees, that it appeared that defendant was able to pay at least a portion of plaintiff's fees.

■ We find that the trial court abused its discretion in ordering defendant to pay a portion of plaintiff's attorney fees. Attorney fees are primarily the responsibility of the party for whom the services are rendered. (*Gilmore v. Gilmore* (1979), 74 Ill. App. 3d 831, 393 N.E.2d 33.) The allowance of attorney fees rests largely within the discretion of the trial court. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 488; *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099.)

Section 508(a)(2) of the Marriage Act allows the trial court, after considering the financial resources of the parties, to order either spouse to pay a reasonable amount for his own costs and attorney fees and those necessarily incurred by the other party. (Ill. Rev. Stat. 1983, ch. 40, par. 508(a)(2); *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099.) To justify an award of fees, the party seeking them must show an inability on his part and an ability by the other spouse to pay them. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286; *In re Marriage of Rogers* (1981), 85 Ill. 2d 217.

We agree with defendant that plaintiff failed to show her inability to pay her own attorney fees. We recognize the trial court's initial finding, made at the start of the hearing on the petition for fees, that it appeared that defendant would be able to pay at least a portion of plaintiff's fees. The record of the hearings, however, fails to show that plaintiff was in fact unable to pay her attorney fees. (*In re Marriage of Fleming* (1980), 80 Ill. App. 3d 1006, 400 N.E.2d 625; *Imes v. Imes* (1977), 52 Ill. App. 3d 792, 367 N.E.2d 1075.) Plaintiff had sufficient resources, particularly in view of her projected 1985 income of $24,000 and the fact that she already had budgeted into her expense account and shown an ability to pay attorney fees. That is, her family expense affidavit, relied on by the trial court in determining her ongoing expenses, included a monthly amount of $54.21 in payment of attorney fees.

■ Plaintiff failed to show that payment of her own attorney fees would undermine her economic stability. (*In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 436 N.E.2d 573.) Our affirmance of the trial court's rulings that increased maintenance and support and made the increased award retroactive to the date of the filing of plaintiff's petition will provide plaintiff with $22,491 in retroactive support. In light of our rulings and the additional sums being made available to plaintiff, to require defendant to pay even a portion of plaintiff's attorney fees would place an undue financial burden on defendant.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed insofar as it allowed an increase in the award of unallocated maintenance and child support and made the increased award retroactive to the date of the filing of plaintiff's petition, and reversed insofar as it required defendant to pay a portion of plaintiff's attorney fees.

Affirmed in part and reversed in part.

McNAMARA, P.J., and WHITE, J., concur.