*In re* MARRIAGE OF LES R. HENSLEY, Petitioner-Appellant, and JANELLE L. HENSLEY, Respondent-Appellee.

Fourth District   No. 4—90—0608

Opinion filed March 21, 1991.—Rehearing denied May 1, 1991.

1044

Anthony P. Corsentino, Ltd., of Peoria, and Susan Butler, of Morton, for appellant.

Carl F. Reardon, of Reardon, Orr & Dvorak, Ltd., of East Peoria, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

This appeal concerns a judgment entered during marriage dissolution proceedings between petitioner, Les R. Hensley (Les), and respondent, Janelle L. Hensley (Janelle). On appeal, Les claims that the trial court erred in (1) awarding maintenance to Janelle in the amount of $310 per month for 8½ years, subject to review in the fourth and seventh years, (2) ordering that Janelle not be required to show efforts for her employment during the period in which she receives maintenance, (3) ordering Les to pay Janelle $1,550 for funds he "overdrew" from his 401(k) savings plan during the pendency of the dissolution of marriage proceedings, and (4) awarding Janelle attorney fees in the amount of $1,000. We affirm in part and reverse in part.

## I. FACTS

Les and Janelle were married in 1980. In January 1989, Les filed for dissolution of the marriage. Les was then 33 years old and Janelle was 28 years old. Two children were born as a result of the marriage, Justin and Jeffrey, 8 and 3½ years old, respectively, at the time of the dissolution proceedings. During the course of the marriage, Janelle was responsible for the primary care of the children. Upon dissolution, Janelle was awarded custody of both children, subject to Les' visitation rights.

At the time of these proceedings, Les was employed by Central Illinois Light Company (CILCO) as a gas engineering specialist, earning approximately $427 in net income per week. He also received net income from rental property of $31 per week. Janelle was employed

by Con Winter Insurance Company as a secretary at the rate of $7.25 per hour. She worked a total of 21 hours per week so that she could "take care of the kids." As of September 1990, Jeffrey would be in day care the entire working day. Claiming zero exemptions on her W-2 forms, Janelle earned approximately $121.66 in net income per week.

At the dissolution hearing, Janelle testified that she was a high school graduate. She had taken classes which allowed her to obtain an insurance license. She had also taken a computer course. She opined that in order to command a higher salary in her field, she would have to take more classes. She testified that an associate degree at Illinois Central College cost $28 per semester hour. A year of coursework there would cost approximately $1,800 for tuition and books. She stated, however, that her employer has never asked her to work full time or to pursue further schooling. Janelle had no physical or mental disabilities.

Because Janelle did not like the rental housing available on the market, she determined that it was necessary for her to buy a house after she and Les were divorced. She hoped to be able to purchase a home costing between $50,000 and $70,000 in order to maintain the standard of living she had previously enjoyed during her marriage. She planned to use the cash proceeds of her property settlement as a down payment.

In connection with his CILCO employment, Les participated in a voluntary 401(k) savings plan. During the pendency of this action, the trial court issued several orders concerning this account. The first of these was a confirming order of June 1, 1989, which stated as follows:

> "Both the Petitioner and the Respondent are prohibited from taking, transferring, encumbering, concealing, damaging, or otherwise disposing of any property except in the ordinary and normal course of business or for the necessities of life or until further order of Court.
>
> * * *
>
> As long as both parties are living together in the marital residence, each party shall continue to pay those payments and expenses he or she traditionally paid in the past in order to maintain the financial status quo between the parties."

By order of June 29, 1989, the court stated as follows:

> "The Petitioner's reasonable expenses caused by his having to live elsewhere than the marital home shall be taken out of marital assets on a share and share alike basis."

By confirming order of July 31, 1989, the court stated as follows:

"[T]he Petitioner *** shall immediately take whatever steps are necessary to cause the sum of Two Thousand Seven Hundred and Fifty Dollars *** to be transferred for the Central Illinois Light Company 501(K) [sic] account of the parties to the regular Central Illinois Light Company savings account of the parties. Respondent shall be entitled to withdraw said sum of $2,750.00 and use the same for any purpose that she see fit. The Petitioner shall not withdraw any additional funds from either of said accounts until such time as the Respondent has received the aforesaid sum of $2,750.00.

     * * *

In addition to the lump sum amount awarded to the Respondent in Paragraph 1 above, Respondent shall immediately be allowed to begin withdrawing from the regular Central Illinois Light Company savings account of the parties such amounts from time to time which are usual and necessary for living expenses for her and the two minor children of the parties. Petitioner shall cause sufficient transfers to be made from time to time from the 501(K) [sic] account of the parties to the regular savings account of the parties to enable the Respondent to make withdrawals for this purpose."

During the course of the proceedings, Les withdrew approximately $14,000 from his 401(k) plan. He testified that he used these funds to pay debts of the parties and living expenses for himself, Janelle, and the children. Of the $14,000 withdrawn from the plan, Janelle directly received $4,150. During the property settlement hearing, Les' accounting of the major payments associated with this account and his regular income was admitted into evidence. However, Les could not account for approximately $7,000 of the money withdrawn.

Les and Janelle agreed that (1) each would receive half the equity in the former marital residence, which amounted to approximately $19,400; (2) Les would be awarded his rental property in exchange for Janelle's being awarded the 1986 Oldsmobile, lien free; and (3) the 401(k) funds were to be divided in half, with each party receiving approximately $10,000. However, Janelle claimed that she should receive more than one-half of the 401(k) funds because Les overdrew from the plan. The parties divided up the rest of the household goods and furnishings without much conflict. A 1977 truck and a 1978 truck were awarded to Les, and Janelle was awarded her pension in the amount of $2,388.12.

With respect to attorney fees, Janelle and her attorney testified that Janelle incurred attorney fees and costs totalling $5,011.40, $2,700 of which had been paid by marital funds. The balance due her attorney totalled $2,311.40. By the time of the dissolution hearing, Les had paid his attorney $3,718.90.

After the hearing, the trial court ordered Les to pay Janelle's attorney $1,000 in attorney fees and $1,550 to Janelle for the money he had "overdrawn" from the 401(k) funds. The court further found that rehabilitative maintenance was appropriate for Janelle in the amount of $310 per month for 8½ years.

Les filed a post-trial motion contesting the award of rehabilitative maintenance, repayment of the 401(k) funds, and attorney fees to Janelle. At the hearing on that motion, the court reserved jurisdiction on the award of maintenance to review it in four and seven years. The court explained its award of maintenance by explicitly stating:

"[The] court is not going to place upon the Respondent [Janelle] the burden of showing efforts for employment during the period of time. The Court entered an award as it now exists and is now being amended principally based upon the age of the children of the marriage, and the possibility that she would be seeking employment."

## II. Analysis

### A. *Maintenance*

Les first argues on appeal that the maintenance awarded Janelle was both an abuse of discretion and against the manifest weight of the evidence because it was excessive in amount and duration. He also claims that the trial court abused its discretion in providing for maintenance review provisions in four and seven years. Last, Les contends that the trial court erred when it ordered, contrary to law, that Janelle was under no duty to show efforts for her employment for the duration of her maintenance award.

Initially, we note that an award of maintenance is within the discretion of the trial court and will not be reversed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. *In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 851, 551 N.E.2d 737, 744; *In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 521 N.E.2d 621.

Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) states the following with respect to maintenance:

"[T]he court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:

(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income.

(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, made without regard to marital misconduct and may be in gross or for fixed or indefinite periods of time and the maintenance may be made from the income or property of the other spouse after consideration of all relevant factors ***." (Ill. Rev. Stat. 1989, ch. 40, pars. 504(a), (b).)

That section further directs the court to consider the following factors in deciding the amount of maintenance:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

■ We find that the evidence clearly supported the trial court's determination that Janelle is entitled to maintenance for the length of time and in the amount awarded to her. At the time of the hearing, Janelle received $121.66 per week in net income. She also is to receive $112.34 per week in child support for her two young sons. These sums total about $936 per month. However, she had no other

income. In her last financial affidavit, Janelle listed her monthly expenses as totalling approximately $1,800, leaving a monthly deficit of approximately $864. Even if Janelle had been "free" to obtain a better paying job (she worked a total of 21 hours per week so that she could take care of her children), she would still have been unable to provide for her and the children's monthly needs. Janelle is not required to sell her assets or her capital in order to maintain herself and the children in the manner established during the marriage. (*In re Marriage of Emery* (1989), 179 Ill. App. 3d 744, 750, 534 N.E.2d 1014, 1018.) The award of maintenance was neither an abuse of discretion by the trial court nor against the manifest weight of the evidence.

■ With respect to Les' second contention regarding Janelle's maintenance award—that the trial court abused its discretion in reserving jurisdiction to review Janelle's maintenance award in four and seven years—we find no abuse of discretion. This order merely provided the court with an opportunity to review the maintenance award at the end of two fixed periods in order to determine whether the amount and terms of the maintenance award continue to be appropriate or should be modified.

In *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 298, 426 N.E.2d 1066, 1069, the trial court similarly chose to reserve jurisdiction to review the award of maintenance after three years in order "to avoid the speculation often inherent in future maintenance awards."

■ The last argument Les makes regarding Janelle's maintenance award is that the trial court erred when it held that Janelle was under no duty to enhance her employment situation while receiving maintenance. Citing primarily *In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147, and *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 450 N.E.2d 1229, Les argues that the Act "places an affirmative obligation on the party receiving maintenance to become financially independent in the future, either by seeking self-supportive employment, or by obtaining appropriate training and skills." We disagree that the goal of becoming financially independent is required *in all cases* where maintenance is awarded.

In *Henzler*, the parties were divorced in 1980 after 20 years of marriage. (*Henzler*, 134 Ill. App. 3d at 319, 480 N.E.2d at 148.) The ex-wife was awarded maintenance in the sum of $1,000 per month for the stated purpose of providing her an opportunity " 'to permit [the ex-wife] to acquire marketable job skills and become self-supporting.' " (*Henzler*, 134 Ill. App. 3d at 320, 480 N.E.2d at 148.)

Because the father was ordered to contribute to the educational expenses of the parties' daughter and no child support was ordered, it appears that there was no unemancipated child of the marriage still living with the ex-wife. (*Henzler*, 134 Ill. App. 3d at 320, 480 N.E.2d at 148.) In 1984, the ex-husband filed a petition to terminate or abate maintenance, stating that the ex-wife had obtained a college degree in accounting, acquired marketable skills enabling her self-sufficiency, and was gainfully employed. (*Henzler*, 134 Ill. App. 3d at 321, 480 N.E.2d at 149.) The trial court reduced the monthly maintenance award from $1,000 to $750, and this court reversed, finding that the petition for termination should have been granted. (*Henzler*, 134 Ill. App. 3d at 323, 480 N.E.2d at 150.) In so holding, this court, citing its earlier decision in *Mittra*, wrote: "[I]t is inherent in the concept of rehabilitative maintenance under the [Act] that the ex-spouse awarded maintenance is under an affirmative obligation to seek appropriate training and skills to become financially independent in the future." (*Henzler*, 134 Ill. App. 3d at 322, 480 N.E.2d at 149, citing *Mittra*, 114 Ill. App. 3d at 634-35, 450 N.E.2d at 1234.) The court concluded in *Henzler* that, because the statutory goal of rehabilitative maintenance had been achieved, the petition for termination should have been granted. *Henzler*, 134 Ill. App. 3d at 323, 480 N.E.2d at 150.

In *Mittra*, the parties had been married approximately 23 years and had three children; two were attending college at the time of the dissolution, and custody of the third child was awarded to the ex-wife, with the ex-husband directed to pay child support. (*Mittra*, 114 Ill. App. 3d at 629, 450 N.E.2d at 1231.) At the time of the dissolution of the marriage in *Mittra*, the husband was 49 years old and the wife was 46 years old. (*Mittra*, 114 Ill. App. 3d at 629, 450 N.E.2d at 1231.) The ex-wife was awarded maintenance in the amount of $1,800 monthly, and the ex-husband challenged the amount and duration of that order. (*Mittra*, 114 Ill. App. 3d at 629, 450 N.E.2d at 1231.) This court affirmed, but noted that the ex-wife was under an affirmative obligation to seek appropriate training and skills to become financially independent in the future, stating that the ex-wife's failure to make good-faith efforts to do so might form the basis for a petition to modify the maintenance award. *Mittra*, 114 Ill. App. 3d at 634-35, 450 N.E.2d at 1234.

Similar language was used in *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294, where, at the time of the dissolution of the parties' marriage, the wife was 47 years old, the husband was 51 years old, the two children of the marriage were emancipated, and the wife was awarded permanent maintenance of $3,500 per

month. (*Heller*, 153 Ill. App. 3d at 227-28, 505 N.E.2d at 1296.) The appellate court held that the award of permanent maintenance was an abuse of discretion, "but only to the extent that it failed to make provision for review of the award." (*Heller*, 153 Ill. App. 3d at 235, 505 N.E.2d at 1301.) The court then stated the following:

"Here, notwithstanding the facts that at the time of trial [the wife] was a healthy 47-year-old woman, *free of raising a family*, with a college degree in teaching, training as a travel agent, and experience in culinary cooking, her part-time employment at $105 per week and/or her anticipated $15,000 annual income from full-time employment as a travel agent was clearly disproportionate to the standard of living established during the marriage. However, in light of the facts that [she] is well-educated and her earning capacity speculative, we believe it would have been more appropriate for the trial court to have reserved for review the maintenance award after a given period of time [citation], such as every five years, in order to reassess [her] ability to become financially independent." (Emphasis added.) *Heller*, 153 Ill. App. 3d at 235, 505 N.E.2d at 1301.

■■■ What makes the present case distinguishable from the foregoing cases is that here Janelle, as the custodian of her two young children, has elected to do only part-time work so that she may be more of a homemaker to those children than if she had full time employment. We believe the trial court's order, when properly understood, amounts to an approval of Janelle's election and a finding that her part-time employment plus acting as a homemaker for her children *is fully equivalent* to her obtaining full-time employment and placing those children in day care. We hold the trial court's conclusions in this regard were well within its discretion. In so holding, we note that section 504(a)(2) of the Act specifically provides that maintenance is appropriate if the court finds that the spouse seeking maintenance "is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)(2).) That language authorizes the court, as here, to award maintenance in order to permit the custodial ex-spouse, if he or she elects to do so, to be employed full time or part time as a homemaker. Section 504(a)(2) of the Act, as so construed, is simply reflective of the legislative judgment of the importance, dignity, and worth of the role of homemaker.

When the children in the present case have become emancipated, then the factual circumstances of this case will be more akin to those

in *Henzler*, *Mittra*, and *Heller*. However, at that point the maintenance order, being 8½ years in duration, will have expired. Accordingly, at this point in the proceedings, we find no abuse in the trial court's exercise of discretion in awarding maintenance so as to permit Janelle to be a homemaker.

## B. *Dissipation of the 401(k) Account*

Les next argues that the trial court erred in ordering him to pay Janelle $1,550 as a result of excessive withdrawals he made from his CILCO 401(k) plan. Specifically, he claims that because the trial court authorized him to use funds from his 401(k) plan for payment of living expenses for both parties, and because he presented a detailed accounting of all major expenditures made from that plan during the pendency of the dissolution proceeding, the trial court abused its discretion in finding that Les dissipated marital assets.

We find *In re Marriage of Rai* (1989), 189 Ill. App. 3d 559, 565, 545 N.E.2d 446, 449-50, helpful in analyzing this issue. In *Rai*, the court stated the following:

"Dissipation has been defined as one spouse's use of marital property for his or her own benefit for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. [Citation.] *** Whether a given course of conduct constitutes dissipation depends upon the facts of each case. [Citation.] The explanation given by the spouse charged with dissipation as to how funds were spent requires the trial court to determine his or her credibility. [Citation.] Where the funds are spent for legitimate *** purposes, there is no dissipation. [Citation.] The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the funds were spent. [Citation.] If expenditures are not documented adequately by the person charged with dissipation, courts will affirm a finding of dissipation. [Citation.] General and vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. [Citation.] Whether there was dissipation is a matter for the trial court's discretion, and a finding concerning dissipation will not be disturbed unless it is against the manifest weight of the evidence."

Here, we find that the trial court did not abuse its discretion in finding that Les dissipated the marital assets and in ordering that Les pay Janelle $1,550 for dissipation of those assets. At the property settlement hearing, Les failed to establish by clear and specific evi-

dence how the funds were spent or that he used them for living expenses on a share-and-share-alike basis. While Les prepared an accounting showing all major payments by him during the pendency of the dissolution proceeding, he gave vague statements about the unaccounted-for funds spent on his living expenses. He also admitted that he was unsure of where all the money went that he withdrew from the 401(k) plan.

## C. *Attorney Fees*

■■ Last, Les argues that the trial court erred in awarding Janelle $1,000 in attorney fees. We agree. While the allowance of attorney fees is within the sound discretion of the trial court (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235; *In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 328, 523 N.E.2d 573, 580), the propriety of an award of attorney fees is dependent upon (1) a showing by the party seeking them of an inability to pay, and (2) a demonstration of the ability of the other party to do so. *Bussey*, 108 Ill. 2d at 299-300, 483 N.E.2d at 1235; *Stockton*, 169 Ill. App. 3d at 328, 523 N.E.2d at 580.

■ At the hearing on attorney fees, Janelle presented no evidence that she was unable to pay her own attorney fees or that Les was in a better financial position to pay them than she was. By the time their marriage was dissolved, Janelle had already used $2,700 in marital funds to pay her attorney, as had Les. In addition, Janelle was awarded $30,000 in cash assets, most of the household goods, and her pension. She was also awarded a lien-free 1986 Oldsmobile, and she was employed at $7.25 an hour. According to their affidavits, both parties were "short of money" and were unable to pay all their monthly expenses. Based upon these facts, the trial court should have ordered each party to pay his or her own attorney fees. Accordingly, we reverse the trial court's order on this issue.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's award of maintenance to Janelle and the trial court's order that Les pay Janelle $1,550 for dissipation of marital assets. We reverse that part of the trial court's order awarding attorney fees to Janelle in the amount of $1,000.

Affirmed in part; reversed in part.

LUND, P.J., and SPITZ, J., concur.