KEITH A. HOLESINGER, Plaintiff-Appellee, *v.* DUBUQUE FEEDER PIG COMPANY, INC., Defendant-Appellant.—(TRI-STATE BANK, Garnishee.)

Third District No. 80-376

Opinion filed March 1, 1982.

Michael A. Stapleton, of East Dubuque, for appellant.

Russell J. Holesinger, of Deckro & Holesinger, of Morrison, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The intervenors, Bernard and Diane Nie, owners of Dubuque Feeder Pig Company, Inc., appeal from the order of the circuit court of Whiteside County finding that a garnishment lien held by the plaintiff-creditor, Keith A. Holesinger, attached to funds contained in a bank account at the garnishee Tri-State Bank. The issue presented for review is whether a determination by a bankruptcy court to abandon a bank account, which was subject to a preexisting garnishment lien, voided the lien and prevented further State court action thereon by the lienholder.

On June 21, 1978, the plaintiff obtained a judgment against the defendant-debtor, Dubuque Feeder Pig Company, Inc. (Dubuque), in the amount of $7,087. In March 1979, he initiated the instant garnishment action and filed an affidavit claiming that funds owned either in whole or in part by Dubuque were maintained in a Tri-State Bank checking account. The garnishee's answer to garnishment interrogatories indicated that checks made payable to Dubuque Feeder Pig Co. and Dubuque Feeder Pig Company, Inc., were deposited in the individual account of the intervenors. The intervenors are the sole shareholders and officers of Dubuque. Before the cause proceeded to a hearing, Dubuque, through its president, Bernard Nie, filed a voluntary bankruptcy petition in the United States District Court for the Northern District of Iowa, thereby

staying the pending garnishment proceedings in the circuit court. As required in the Bankruptcy Act, Dubuque listed the plaintiff in its bankruptcy schedule as an unsecured creditor of the company. Dubuque did not list the Tri-State Bank account subject to the plaintiff's garnishment action as part of its assets. On August 29, 1979, the bankruptcy court declared Dubuque to be bankrupt and released the company from its dischargeable debts, which included the plaintiff's "unsecured" claim.

On October 10, 1979, Dubuque, through Nie, its president, filed an amendment to the voluntary petition, declaring that the plaintiff was pursuing his claim against Dubuque by garnishing a bank account in the name of Nie. The company alleged that its schedule of assets did not include the bank account because the funds contained in the account were owned solely by the Nies and requested that the bankruptcy court determine whether Dubuque had any interest in the account. After giving notice to the plaintiff, the trustee examined Bernard Nie and concluded that, because the Tri-State account contained exclusively the funds of Bernard and Diane Nie, the company had no interest or equity in the account. Accordingly, on January 24, 1980, the bankruptcy court ordered the trustee to abandon the bank account.

Nie, as president of Dubuque, then moved in the circuit court to dismiss the garnishment action and to discharge the garnishee, arguing that the previous findings of the bankruptcy court concerning the ownership of the bank account were conclusive and precluded the circuit court from relitigating that issue. The court rejected the application of *res judicata* and found that the garnishment lien attached to the funds contained in the bank account. At the same time, Nie personally petitioned the bankruptcy court to intervene and to enjoin the garnishment action in the circuit court. Based on its earlier abandonment order, the bankruptcy court denied Nie's application for intervention and injunctive relief. The circuit court then rejected the intervenors' motion to vacate its judgment and, on June 16, 1980, entered an order in favor of the plaintiff, finding a valid garnishment lien in his favor attaching to the bank account. The intervenors mailed their notice of appeal to the clerk of the circuit court on July 14, 1980, but the notice was not received until July 21, 1980.

■■ As a preliminary issue, the plaintiff contends that the intervenors' failure to have their notice of appeal filed in the circuit court within 30 days after the entry of the final judgment from which they now appeal deprives this court of its jurisdiction. Supreme Court Rule 303(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 303(a)) provides that "[N]otice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or nonjury case,

within 30 days after the entry of the order disposing of the motion." This requirement of timely notice of appeal is mandatory, and the failure to comply with this requirement renders an appellate court without jurisdiction. (*Allabastro v. Wheaton National Bank* (1980), 91 Ill. App. 3d 222, 414 N.E.2d 537.) The facts show that, although the intervenors' attorney mailed the notice of appeal on July 14, two days before the expiration of the 30-day period, the clerk of the circuit court did not receive the notice until seven days later, on July 21. The plaintiff asserts that actual receipt of the notice, not the date of mailing, should control in determining the date on which the notice of appeal is "filed." We must reject the plaintiff's argument and hold that, for purposes of Rule 303(a), the time of mailing constitutes the date on which the notice of appeal is filed in the circuit court. In reaching this decision, we are cognizant of a contrary result in *Schneider v. Vine Street Clinic* (1979), 77 Ill. App. 3d 946, 397 N.E.2d 194, where a divided court declared that the date of filing of the notice of appeal is the date of actual receipt by and filing with the clerk of the circuit court.

However, an examination of related statutory provisions indicates a general intent that mailing of the notice of appeal within 30 days from the entry of judgment will constitute filing of notice with the clerk of the circuit court. Contrary to *Schneider*, we do not see this decision as reaching outside our jurisdictional authority to adjudicate this instant case. Instead, today's decision is based upon our authority to determine the boundaries of our jurisdiction, a power which lies inherent in every court. See *United States v. United Mine Workers* (1946), 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677.

We first refer to section 1.25(1) of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1979, ch. 1, par. 1026(1)), which states that, unless provided otherwise, any writing that must be filed with the State or any political subdivision thereof shall be deemed filed with the recipient on the date shown by a post office cancellation mark. Although this section would not seem to apply specifically to the instant situation because the clerk of the circuit court, an office within the judiciary, is not the "State" or a "political subdivision thereof," section 1.25 does evince a general policy to equate filing with mailing.

Second, Supreme Court Rule 11 (Ill. Rev. Stat. 1979, ch. 110A, par. 11(b)) provides that papers other than process and complaint may be served by depositing them in a post office or a post office box. The proof of such service is provided for in Rule 12, which states that service to other parties of papers other than process and complaint may be established by proof of depositing the papers in the mail and that the effective date of such mailed papers is complete four days after mailing. Although these provisions likewise would seem not to apply specifically

to the instant situation because the notice of appeal must be received by the circuit court in order to perfect appellate jurisdiction, since Rules 11 and 12 direct their attention to notice of the parties served with papers other than process and complaint, they do demonstrate a propensity of equating filing with mailing for papers required to be filed in the circuit court. Finally, Supreme Court Rule 373 states that the constructive date of filing papers in a reviewing court "shall be deemed the time of mailing the record on appeal, any brief, excerpts from record, or any other papers required to be filed in a reviewing court within a specified time." As with section 1.25 and Supreme Court Rules 11 and 12, Supreme Court Rule 373 does not govern the filing of the notice of appeal because the notice must be filed in the circuit court not a reviewing court. (See Ill. Ann. Stat., ch. 110A, par. 373, Committee Comments, at 501 (Smith-Hurd 1976).) Yet, Rule 373, as do the other aforementioned sections, clearly establishes a policy that favors the time of mailing over actual receipt when the rights of parties are involved.

■■ Our holding today is also supported by the supreme court's order reinstating the appeal of *In re Estate of Eiberger*, which is discussed in the dissent in *Schneider v. Vine Street Clinic* (1979), 77 Ill. App. 3d 946, 948, 397 N.E.2d 194, 196. In *Eiberger*, the appellant incorrectly mailed the notice of appeal to the appellate court instead of the circuit court. The notice was received by the appellate court within 30 days of the final judgment, and by the time the clerk forwarded the notice to the circuit court, the 30-day period elapsed. The appellate court then dismissed the appeal for failure to comply with Rule 303, but the supreme court, in the exercise of its supervisory jurisdiction, summarily ordered the appellate court to reinstate the appeal. (*In re Estate of Eiberger*, No. 50090, filed January 26, 1978.) For these foregoing reasons, we will continue to adhere to our established custom and accept jurisdiction where the notice of appeal is mailed within the 30-day period set forth in Rule 303, but where the circuit court does not receive the notice until after the expiration of the 30-day period.

The crux of the intervenors' argument on appeal is that, because the bankruptcy court first adjudicated the issue of the ownership of the funds held in the bank account and ordered the bankruptcy trustee to abandon any claims of ownership therein, the State court was barred by *res judicata* from considering that issue in the instant garnishment attachment action brought by the plaintiff against the discharged debtor, Dubuque. We disagree and affirm.

■■ The doctrine of *res judicata* will preclude a second suit raising an issue adjudicated in the first suit where: (1) the parties or their privies are identical; (2) the identical issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition of the prior

action; and (4) the determination made of the issue in the first suit was necessary and essential to the resulting judgment. *(Hoffman v. Hoffman* (1928), 330 Ill. 413, 161 N.E. 723.) In the instant case we find that the lack of privity between the parties to the bankruptcy action and the garnishment action prevents the application of merger and bar to the circuit court's adjudication of whether the debtor owned or controlled funds held by the garnishee.

■■■ A discharge in bankruptcy does not in any way affect, release, or discharge a valid lien created under State or Federal law. *(Filker v. Honda Motor Co.* (1980), 87 Ill. App. 3d 865, 409 N.E.2d 495.) For this reason, bankruptcy is often depicted as a forum for unsecured creditors, and a secured creditor may elect to remain "aloof" from the proceedings, subsequently enforcing his lien against the debtor's encumbered property independently of and without prejudice from the actions of the bankruptcy court. (9A Am. Jur. 2d *Bankruptcy* §779 (1980).) In March 1979, when the plaintiff served the garnishee with summons and interrogatories, the plaintiff's garnishment lien arose in the debtor's property held by the garnishee bank. *(Pilafas v. Pilafas* (1963), 39 Ill. App. 3d 69, 188 N.E.2d 235.) At that moment the plaintiff became a secured creditor, who, by electing to remain ˙aloof, declined to participate in the bankruptcy proceedings and, accordingly, suffered no prejudice to his secured rights.

■■ The trustee, who is usually elected by the unsecured creditors at the first creditors' meeting, represents the estate and thus, the interests of the unsecured creditors. Because of this congruity of interests, a trustee stands privy to an unsecured creditor for the application of *res judicata. (Normal State Bank v. Killian* (1944), 386 Ill. 449, 54 N.E.2d 539.) On the other hand, unless a fully secured creditor elects to participate in the bankruptcy proceedings, he has no voice in the selection of the trustee because he has no concomitant stake in the estate. Accordingly, the doctrine of *res judicata* will not preclude such a secured creditor from litigating in a later action an issue which putatively was identical to the issue litigated in the bankruptcy action because of the nonidentity of interests between the trustee and the secured creditor.

■■ The decision to abandon property, the legal effect of which is to remove the property from the bankruptcy court's jurisdiction and to place the parties in the same position which they held prior to the filing of bankruptcy *(In re Polumbo* (W.D. Va. 1967), 271 F. Supp. 640), was made by the bankruptcy court and was based upon findings of the trustee following an examination of the debtor.

■■ Although Dubuque listed the plaintiff in its schedule of unsecured creditors, such filing of schedules does not have the force of an independent proceeding for raising *res judicata. (Filker v. Honda Motor Co.* (1980), 87 Ill. App. 3d 865, 409 N.E.2d 495.) For the foregoing reasons, we

hold that the circuit court correctly rejected Dubuque's claim that *res judicata* prevented the court from entering a judgment finding a valid garnishment lien in funds held in the garnishee's bank.

Accordingly, we affirm the judgment of the circuit court of Whiteside County.

Affirmed.

STOUDER and ALLOY, JJ., concur.