*In re* MARRIAGE OF RONALD F. HAWKING, Petitioner-Appellant, and DAWN R. HAWKING, Respondent-Appellee.

First District (1st Division)  No. 1—91—2835

Opinion filed December 28, 1992.

Feldman & Halprin, of Chicago (Judith Halprin and David Feldman, of counsel), for appellant.

James C. Tenbroeck, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner Ronald Hawking appeals from a final order of the circuit court of Cook County which dismissed his petition to terminate maintenance. The petition asserted that his ex-wife, respondent Dawn Hawking, was engaging in a conjugal relationship on a resident, continuing basis.

The sole issue on appeal is whether the circuit court properly interpreted section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 510(a)), which provides in relevant part that "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." The circuit court interpreted this provision to allow modifications only as to installments accruing subsequent to when the nonmoving party *receives* "due notice" of the filing of the modification petition. We agree with this interpretation and, accordingly, affirm the dismissal of petitioner's petition on the grounds that it was untimely as a matter of law.

Petitioner filed on Friday, March 15, 1991, his petition to terminate maintenance. According to the "notice of motion" appearing in the record, which also bears a March 15, 1991, filing date, petitioner's counsel swore to having mailed respondent on the same date the no-

tice of motion form and a copy of the motion by first-class and certified U.S. mail.

Petitioner's petition referred to a March 17, 1989, judgment dissolving the parties' marriage. The judgment, which in turn incorporates the parties' dissolution agreement, includes two clauses relevant to this appeal. First, petitioner agreed to pay respondent as maintenance in gross $150,000 over a period of three years, with the final payment of $50,000 due "two years after entry of a judgment for dissolution of marriage." The date of judgment was March 17, 1989, and because the two-year anniversary of this date fell on a Sunday, the parties agree on appeal that the final payment became due March 18, 1991.

Second, the parties agreed that the maintenance payments would terminate "in the event [respondent] dies, or remarries or cohabits with another person on a resident, continuing, conjugal basis prior to the date on which the last such payment is due." Petitioner alleged in his petition that, upon information and belief, respondent was living with another person in such capacity since November 1990.

Respondent filed a motion to dismiss the petition. Her motion attached both the regular and certified mail envelopes which, contrary to respondent's counsel's certificate of service, bear a postmark date of Tuesday, March 19, 1991, in the p.m. hours. Respondent alleged in her motion that she received the regular mail envelope on March 20, 1991, and the certified mail envelope on March 27, 1991. Citing the recent amendment to section 510(a) of the Act, respondent requested dismissal of the petition as a matter of law because the final maintenance payment, which became due March 18, 1991, accrued prior to respondent receiving "due notice" of the filing of the modification petition as set forth in section 510(a) of the Act.

The circuit court received briefing on the proper interpretation of section 510(a) of the Act. Following argument, the court dismissed the petition as untimely as a matter of law. Petitioner's motion for rehearing was subsequently denied. This appeal followed.

In 1974, Congress enacted title IV-D of the Social Security Act, which created a Federal-State scheme for the establishment and enforcement of child support under the auspices of the Federal Office of Child Support Enforcement. States were required to establish child support enforcement plans administered by State IV-D agencies and partially funded by the Federal government. These plans would use existing State laws and procedures to establish paternity and to establish and enforce support obligations on behalf of minor children. The purpose of title IV-D was to corral the growing cost of the Aid to

Families with Dependent Children (AFDC) program. See generally Comment, *An Unfortunate Change of Circumstances: Wisconsin Prohibits Retroactive Revision of Child Support Orders*, 1988 Wis. L. Rev. 1123; Dodson & Horowitz, *Child Support Enforcement Amendments of 1984: New Tools for Enforcement*, 10 Fam. L. Rep. (BNA) 3051 (Oct. 23, 1984).

Despite title IV-D and State legislation such as the Revised Uniform Reciprocal Enforcement Between States Act, which made it harder for child support delinquents to escape responsibility by crossing State lines, the budget of the AFDC program continued to grow. This growth continued in part because local authorities of the various States were reluctant to undertake the enforcement responsibilities delegated to them by these laws. Congress responded in 1986 with the Child Support Enforcement Amendments of 1984. Unlike the 1974 law, these amendments mandated that States enact a number of *specific* remedies and procedures to improve their child support enforcement programs. States faced losing title IV-D funds if they failed to timely comply. Comment, *An Unfortunate Change of Circumstances: Wisconsin Prohibits Retroactive Revision of Child Support Orders*, 1988 Wis. L. Rev. 1123; Dodson & Horowitz, *Child Support Enforcement Amendments of 1984: New Tools for Enforcement*, 10 Fam. L. Rep. (BNA) 3051 (Oct. 23, 1984).

One of the mandates of the 1986 amendments pertained to retroactive modification of child support arrearages. This mandate is codified at 42 U.S.C. §666(a)(9)(C) (1988), with the identical regulation appearing at 45 C.F.R. §303.106 (1991). The mandate provides:

"§666. Requirement of statutorily prescribed procedures to improve effectiveness of child support enforcement

(a) Types of procedures required

In order to satisfy section 654(20)(A) of this title, each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under this part:

\* \* \*

(9) Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date is due)—

(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,

(B) entitled as a judgment to full faith and credit in such State and in any other State, and

(C) not subject to retroactive modification by such State or by any other State;

except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, *but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.*" (Emphasis added.) 42 U.S.C. §666(a)(9) (1988).

Faced with the potential loss of millions of dollars, the Illinois General Assembly acted to comply with the Federal mandate. Effective May 1, 1987, Public Act 85—002 amended section 510(a) of the Act, and although not directly involved here, added subsection (d) to section 505 of the Act. A quick review of the latter amendment and the accompanying historical notes demonstrates that the Federal mandate prompted the legislature to act:

"(d) Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced." Ill. Rev. Stat. 1991, ch. 40, par. 505(d).

The accompanying historical and practice note explains:

"Subsection [d] was enacted in response to the federal mandate contained in Public Law 99—509, effective October 21, 1986, known as the Consolidated Omnibus Budget Reconciliation Act, which further amended Title IV-D of the Social Security Act to require states to have provisions of this kind in its law as a precondition to receiving federal assistance. The federal law in requiring these procedures sought to prohibit retroactive modification of child support arrearages and thereby increase the effectiveness of the states' child support enforcement programs. See §9103 amending §466(a) of Title IV-D of the Social Security Act, 42 U.S.C. §666(a). *The amend-*

*ment to section 510(a) of this Act by Public Act 85—002 was also apparently dictated by this federal law. See Supplement to Historical and Practice Note to §510(a), infra.*" (Emphasis added.) Ill. Ann. Stat., ch. 40, par. 505, Supplement to Historical and Practice Notes, at 179 (Smith-Hurd Supp. 1992).

When construing a statute, our primary objective is to ascertain the intent of the legislature. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297, 478 N.E.2d 326; *People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174.) We must, where possible, attribute some reasonable meaning to every word, clause, or section of a statute. *Freeman*, 106 Ill. 2d at 297.

It is presumed that every amendment to a statute is made for some purpose, and effect must be given to the amendment in a manner consistent with that purpose. (*Freeman*, 106 Ill. 2d at 297; *People v. Youngbey* (1980), 82 Ill. 2d 556, 563, 413 N.E.2d 416.) The courts must consider the language of the amended statute in light of the need for the amendment and the purpose which it serves. *People v. Richardson* (1984), 104 Ill. 2d 8, 16, 470 N.E.2d 1024.

In this case, it is clear that the purpose underlying the amendment to section 510(a) was to comply with a Federal mandate. Prior to May 1, 1987, section 510 provided in relevant part that "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to the filing of the motion for modification *with due notice by the moving party* and only upon a showing of a substantial change in circumstances." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) Following the amendment, section 510(a) states in relevant part that "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing *subsequent to due notice* by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 40, par. 510(a).

A comparison of section 510(a) both before and after the amendment reveals that the legislature merely moved the words "due notice" from one location to another. No other significant changes were made.

■ A material change in language of an unambiguous statute creates a presumption, although it can be rebutted by evidence of contrary legislative intent, that the amendment was intended to change law. (*Secretary of State v. Mikusch* (1990), 138 Ill. 2d 242, 252, 562 N.E.2d 168; *Weast Construction Co. v. Industrial Comm'n* (1984), 102 Ill. 2d 337, 340, 466 N.E.2d 215.) However, when the General Assem-

bly amends a statute and no change is made in parts of it, the repeated portions, either literally or substantially, are regarded as a continuation of the existing law and not as the enactment of a new law upon the subject. *Klemme v. Drainage District No. 5* (1942), 380 Ill. 221, 224, 43 N.E.2d 966; *People ex. rel. Martin v. Village of Oak Park* (1939), 372 Ill. 488, 490, 24 N.E.2d 571; 1A N. Singer, Sutherland on Statutory Construction §22.33 (Sands 4th ed. 1985).

Here, the legislature clearly intended to change the meaning of section 510(a) to comply with the Federal mandate. Prior to the amendment, our cases interpreted section 510(a) to permit retroactive modification to the date of the filing of the modification petition, but no earlier. (*In re Marriage of Geis* (1987), 159 Ill. App. 3d 975, 988, 512 N.E.2d 1354; *In re Marriage of Jobe* (1987), 151 Ill. App. 3d 998, 999, 503 N.E.2d 1146 (and cases cited therein); *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 976-79, 479 N.E.2d 1152; *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 74, 441 N.E.2d 1221; *In re Marriage of Van Winkle* (1982), 107 Ill. App. 3d 73, 437 N.E.2d 358; *Harner v. Harner* (1982), 105 Ill. App. 3d 430, 436, 434 N.E.2d 465; *Kowalski v. Kowalski* (1981), 96 Ill. App. 3d 830, 833, 422 N.E.2d 83; *In re Marriage of Junge* (1979), 73 Ill. App. 3d 767, 771, 392 N.E.2d 313; Ill. Ann. Stat., ch. 40, par. 510, Historical and Practice Notes, at 698 (Smith-Hurd 1980); but see *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 913-16, 483 N.E.2d 692 (approving retroactive modification of maintenance and support obligation to date of wife's remarriage).) Whether or not to grant retroactive modification to the date of filing of the modification petition rested within the discretion of the trial court, whose discretion would not be disturbed on review absent an abuse thereof. *In re Marriage of Geis* (1987), 159 Ill. App. 3d 975, 988-89, 512 N.E.2d 1354.

A very analogous case interpreting section 510(a) prior to its amendment is *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 124, where we addressed in particular the issue of whether one's spouse's cohabitation terminates a maintenance obligation as of the date of cohabitation or whether the date of the filing of the modification petition marks the earliest date from which a maintenance obligation may be modified. We stated:

> "It is well settled that a party may not unilaterally reduce allowances on the basis of a claimed change in circumstances. Modification is considered a judicial function which is to be administered by the court in its discretion. [Citation.] Since a court has no power to modify past due installments of maintenance [citation], a petition for modification or termination

would only apply to payment owed subsequent to the date of the filing of the petition." *Kessler* , 110 Ill. App. 3d at 74.

■ It is presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of all previous enactments. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 248-49, 572 N.E.2d 168.) Similarly, the General Assembly is presumed to know how courts have interpreted a particular statute. *Williams v. Crickman* (1980), 81 Ill. 2d 105, 111, 405 N.E.2d 799.

■ We conclude that the Illinois General Assembly, in moving the "due notice" phrase from one location to another, changed the law as it had been previously interpreted by this State's judiciary. The filing date of the modification petition is no longer the earliest point to which a retroactive modification of maintenance or support payments may be ordered. Rather, consistent with the Federal mandate, the earliest point to which retroactive modification of maintenance or support payments may be ordered is the date on which the nonmoving party receives "due notice" from the moving party of the filing of the modification petition. (See *In re Marriage of Frazier* (1990), 205 Ill. App. 3d 621, 563 N.E.2d 1236; Ill. Ann. Stat., ch. 40, par. 510, Supplement to Historical and Practice Notes, at 232 (Supp. 1992) (amendment limits scope of former retroactivity rule).) Other State legislatures faced with the Federal mandate have similarly worded their retroactivity amendments to prohibit modifications prior to when the nonmoving party receives service or actual notice of the modification petition. See Del. Code. Ann. tit. 13, §513(d)(2) (Supp. 1992) (date that notice of the petition has been given to the respondent); Mich. Comp. Laws Ann. §552.603(3) (Callaghan Supp. 1992) (date notice of petition is given to payer or recipient); Minn. Stat. Ann. §518.64(c) (West Supp. 1992) (date of service of notice of the motion on the responding party); Mo. Ann. Stat. §452.370(6) (Vernon Supp. 1992) (date of personal service); Mont. Code Ann. §40—4—208(1) (1991) (actual notice to the parties of the motion for modification); S.C. Code Ann. §20—7—933 (Law. Co-op. Supp. 1991) (service of the action for modification); Wisc. Stat. Ann. §767.32(1)(m) (West Supp. 1992) (date that notice of the action is given to the respondent); see also *Grable v. Grable* (1991), 307 Ark. 410, 821 S.W.2d 16 (interpreting Arkansas statute to mean date proper notice is given to opposing party).

In reaching our conclusion, we have considered petitioner's arguments that the date of mailing, not receipt, marks the earliest date to which retroactivity may be ordered. *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152, upon which petitioner relies, is distinguishable as it interprets section 510(a) prior to its amendment.

*Holesinger v. Dubuque Feeder Pig Co.* (1982), 104 Ill. App. 3d 39, 432 N.E.2d 645, and *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 493 N.E.2d 1088, also relied upon by petitioner, are factually distinguishable as these cases endorse a mailbox rule for the filing of notices of appeals and post-trial motions. Petitioner's authority holding that a complaint satisfies the applicable limitations period when filed rather than served is also not analogous to the present case. (See *Peoples Gas Light & Coke Co. v. Austin* (1986), 147 Ill. App. 3d 26, 497 N.E.2d 790.) None of these cases were faced with interpreting language like that in section 510(a).

Also, we reject petitioner's argument that the legislative history of the amendment to section 510(a) requires us to hold that the legislature intended the retroactivity limitation to only apply to child support, not maintenance. While we acknowledge that the legislative history to which petitioner has directed us reveals that the Federal mandate prompted our legislature to act, and while the Federal mandate concerned the retroactivity of child support orders only, the legislature apparently chose not to so limit the language of its amendment. The legislature could have easily tailored its amendment to apply to child support orders only, but it chose otherwise. To adopt petitioner's argument would require that we read the phrase "maintenance or support" within section 510(a) as just "support." Canons of statutory construction prevent this court from ignoring words which plainly appear in a statute. *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297, 478 N.E.2d 326.

Finally, petitioner's citation to a portion of the supplemental historical and practice notes to section 510(a) does not support his claim that the amendment did not change the law. The language in question deals with a court's discretion to order retroactivity. (See Ill. Ann. Stat., ch. 40, par. 510, Supplement to Historical and Practice Notes, at 233 (Smith-Hurd Supp. 1992).) This body of case law to which the note refers is distinct from that which deals with the earliest date to which a retroactive modification may be ordered. The latter set of cases is involved in this appeal. Following the amendment, as the practice note correctly provides, whether or not to order retroactive modification remains discretionary with the trial court. Neither the amendment nor this opinion modifies a trial court's discretionary power to order retroactive modification.

■ Turning to the facts of this case, we conclude that petitioner's motion to terminate was untimely. The record shows that petitioner filed his motion on March 15, 1991, mailing a copy of it by first-class mail to respondent the same day. Although we are troubled by the

regular mail envelope's post-mark date of March 19, 1991, in the p.m. hours, as this latter date does not square with counsel's certificate of service, this factual difference is of no consequence in this case. Respondent claims to have received petitioner's regular mail envelope on March 20, 1991. The final installment was due March 18, 1991. Clearly, respondent did not receive notice of petitioner's motion until after the final installment became due. Thus, petitioner's motion was untimely.

Even if we were to apply Supreme Court Rule 12 (see *In re Marriage of Betts* (1987), 159 Ill. App. 3d 327, 331-32, 511 N.E.2d 732; *Wait v. Wait* (1987), 158 Ill. App. 3d 271, 274, 510 N.E.2d 600; *In re Marriage of Ponsart* (1983), 118 Ill. App. 3d 664, 455 N.E.2d 271 (finding that section 511(a) permits service of a modification petition on the nonmoving party by regular mail pursuant to Supreme Court Rule 11), which provides that service by mailing is complete four days after mailing, respondent did not "receive" notice of petitioner's motion until March 19, 1991. This was one day too late.

For the foregoing reasons, the final order of the circuit court of Cook County dismissing petitioner's petition to terminate maintenance is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.