CHICAGO OSTEOPATHIC MEDICAL CENTERS, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellee and Cross-Appellant (The County of Cook, Defendant-Appellant and Cross-Appellee).

First District (5th Division)   Nos. 1—92—3774, 1—92—3937 cons.

Opinion filed March 17, 1995.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

Jack O'Malley, State's Attorney, of Chicago (Karen Covy, Patricia M. Shymanski, and Laura L. Fese, Assistant State's Attorneys, of counsel), for appellant County of Cook.

Rosenthal & Schanfield, P.C., of Chicago (Gerald B. Mullin and Richard E. Friedman, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Chicago Osteopathic Medical Centers instituted this declaratory judgment and statutory liability action against the City of Chicago (the City) and the County of Cook (the County) seeking construction and application of certain Illinois statutes and a declaration imposing liability upon the City and the County for the cost of medical care given to persons arrested or detained by the Chicago police department. The trial court ruled in favor of the plaintiff and allocated liability against the City and the County. After denial of the plaintiff's motion for prejudgment interest and entry of a revised agreed order, the County appealed and the City cross-appealed.

The facts of this lawsuit are not in dispute. During the years 1988, 1989, and 1990, the City of Chicago police department brought several hundred adults who were arrested and juveniles who were detained for various violations of State law to the plaintiff hospital for medical care and treatment. Plaintiff provided the necessary medical care and treatment and prepared bills reflecting plaintiff's customary charges. Thereafter, plaintiff sought payment from the City and then from the County. Each of the entities refused payment contending liability by the other.

On appeal the County disputes liability for three categories of patients: (1) adult arrestees who received medical treatment on the same day but prior to actual physical custody by the County sheriff; (2) adult arrestees who received medical treatment on the same day as the charging event but who were never in the physical custody of the County sheriff; and (3) juvenile detainees who received medical treatment on the same day but prior to actual physical custody by the juvenile detention center. The City disputes liability for three additional categories: (1) adult arrestees arrested on warrants requested by the City police; (2) adult arrestees for whom criminal court records could not be obtained; and (3) certain juvenile detainees.

■ In accordance with the Cities and Villages Act, various municipal officials, including policemen, are authorized to arrest all persons

who violate criminal laws of the State and detain them until they can be brought before the proper court. (Ill. Rev. Stat. 1987, ch. 24, par. 3—9—4 (now 65 ILCS 5/3—9—4 (West 1992)); see also Chicago Municipal Code § 2—84—230 (1992).) After an arrestee is charged with a violation of a State criminal statute, it is the duty of the sheriff to hold the alleged offender until bail is posted or if bail is not posted to hold him or her in the county jail until the time for trial. *St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511, 331 N.E.2d 142; see *People v. Thomlison* (1948), 400 Ill. 555, 81 N.E.2d 434; *People v. Frugoli* (1929), 334 Ill. 324, 166 N.E. 129; see also Ill. Rev. Stat. 1987, ch. 75, par. 104 (now 730 ILCS 125/4 (West 1992)); Ill. Rev. Stat. 1991, ch. 34, par. 3—15003 (now 55 ILCS 5/3—15003 (West 1992)).

It is undisputed that once the County has custody of any alleged offender, it is charged with the responsibility of maintaining that person and must furnish all necessary medical aid. (Ill. Rev. Stat. 1987, ch. 75, pars. 105, 117 (now at 730 ILCS 125/5, 17 (West 1992)).) As provided in section 17 of "An Act in relation to prisoners and jails" (the County Jail Act):

> "The Warden of the jail shall furnish necessary *** medical aid for all prisoners under his charge ***. When medical or hospital services are required by any person held in custody, the county, private hospital, physician or any public agency which provides such services shall be entitled to obtain reimbursement from the county for the cost of such services." (Ill. Rev. Stat. 1987, ch. 75, par. 117.)

It is further undisputed that until the arrestee is in the custody of the sheriff, the arresting authority is liable for medical expenses relating to the arrestee. Section 16 of the County Department of Corrections Act (Ill. Rev. Stat. 1987, ch. 125, par. 216), subsequently known as the County Department of Corrections Law (Ill. Rev. Stat. 1989, ch. 34, par. 3—15016 (now at 55 ILCS 5/3—15016 (West 1992))), provides in relevant part:

> "An arresting authority shall be responsible for any incurred medical expenses relating to the arrestee until such time as the arrestee is placed in the custody of the sheriff. However, the arresting authority shall not be so responsible if the arrest was made pursuant to a request by the sheriff."

This provision also is included verbatim in section 17 of the County Jail Act effective January 1, 1990.[1]

The crux of the instant appeal turns upon the question of when

---

[1]The arresting authority language in the County Jail Act was first enacted pursuant to Public Act 83—370, effective January 1, 1984, when the

"an arrestee is placed in the custody of the sheriff" so that the County and not the City would be liable to the plaintiff for medical expenses incurred on behalf of the arrestees. Prior to enactment of the "arresting authority" language in any statute, case law held that the sheriff, as custodian of all prisoners in the county jail (Ill. Rev. Stat. 1969, ch. 75, par. 2), had custody of the hospitalized arrestee on the date the arrestee was charged with a violation of State law and that from that moment the county was liable for the medical care provided to that arrestee. (*St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511, 331 N.E.2d 142.) In *St. Mary of Nazareth Hospital*, the arrestee was taken into custody by the city police and immediately transported to the hospital where he remained for three months. Approximately three hours after he was brought to the hospital, a complaint was prepared and signed by the complaining witness. The court hearing scheduled later that day was continued because the arrestee remained hospitalized and was unable to appear in court. The court held the county liable for the arrestee's hospital bill despite the fact that the sheriff did not have actual custody of the hospitalized arrestee and despite the fact that the city police maintained a guard on the arrestee for approximately two months of the three-month hospitalization. Of significance to the court was the fact that the arrestee had been charged with a violation of the Illinois Criminal Code of 1961 and that "[a]fter [he] had been charged *** it was the duty of the sheriff of Cook County to hold [him] until bail was made or if bail was not made to hold him until the time for trial." (29 Ill. App. 3d at 515-16, 331 N.E.2d at 146.) The court further found that since the arrestee would have been in the custody of the sheriff but for the hospitalization, the arrestee "was technically in the custody of the sheriff of Cook County from and after [the date the arrestee was charged]." 29 Ill. App. 3d at 516, 331 N.E.2d at 146.

---

identical language was added to the County Department of Corrections Act. It was incorporated into section 24 of "An Act to revise the law in relation to jails and jailers," the predecessor of the County Jail Act. Six months later, effective July 1, 1984, pursuant to Public Act 83—1073, "An Act in relation to prisoners and jails ***" was repealed and replaced with the County Jail Act. Section 24 was renumbered as section 20 and appeared in its pre-1984 form. There was no mention of "arresting authority" within any section of the County Jail Act in the enactment effective July 1, 1984. This apparent omission was corrected when Public Act 86—794 was enacted, effective January 1, 1990. Public Act 86—794 also amended section 16 of the Department of Corrections Law and section 17 of the County Jail Act to limit the arresting authority's liability to medical expenses incurred on account of injuries suffered by the arrestee during the course of the arrest.

In *Sisters of the Third Order of St. Francis v. County of Tazewell* (1984), 122 Ill. App. 3d 605, 641 N.E.2d 1064, neither of the two arrestees was charged prior to his release from the hospital. One was charged after his release and the other died in the hospital without having been charged. Although *Sisters of the Third Order of St. Francis* was decided after the enactment of the "arresting authority" language, the medical expenses were incurred prior to its enactment as in the *St. Mary of Nazareth* case. The court concurred with the holding in *St. Mary* that the charging of the patient while hospitalized was the catalyst which resulted in liability by the county for incurred medical expenses, but held that, since the arrestees had not been charged while hospitalized, the City of East Peoria rather than the county was responsible for the medical expenses incurred.

In *Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358, 521 N.E.2d 251, the medical expenses were incurred after the "arresting authority" language had been enacted. The court nevertheless relied on *Sisters of the Third Order of St. Francis* and *St. Mary of Nazareth Hospital*, and, as in *Sisters of the Third Order*, held the City of Rockford liable because the arrestee was not in sheriff's custody at the time the medical services were rendered since the services occurred prior to the arrestee being charged with a crime. The court in *Rockford Memorial Hospital* found further support for its holding based on the "arresting authority" language in section 16 of the County Department of Corrections Act (Ill. Rev. Stat. 1985, ch. 125, par. 216).[2] Recognizing that that statute had not been judicially interpreted, the court noted that the language of the statute was clear and unambiguous in its requirement that the arresting authority is liable for medical expenses incurred after the arrest but prior to the arrestee's being charged or placed in the sheriff's custody.

■ In the instant appeal, the County's initial contention is that "custody of the sheriff" does not occur until the sheriff has obtained actual physical custody of the arrestee.[3] In support of its argument, the County relies on *OSF Healthcare Systems v. County of Lee* (1993),

[2]It should be noted that the County Department of Corrections Act (Ill. Rev. Stat. 1985, ch. 125, par. 201 *et seq.*) applies only to counties having more than 1 million inhabitants. (Ill. Rev. Stat. 1985, ch. 125, par. 202.) In 1980, Winnebago County, the county within which the City of Rockford is located, had a population of 250,884. (County and City Data Book, United States Department of Commerce 144 (1994).) Consequently, the only statutory language applicable to that case was the County Jails Act wherein the "arresting authority" language had been repealed and had not yet been reenacted. See footnote 1 *supra.*

[3]The City argues that the County has waived this argument because it

239 Ill. App. 3d 824, 607 N.E.2d 699, a case decided after the trial court rendered its final decision in the instant case. In *OSF Healthcare Systems*, the arrestee, who was shot by the Dixon police, was transported by them to the hospital where he remained for over two months before he was transferred to the county jail. The court held that, regardless of when the arrestee was charged, the charging of the arrestee did not trigger the county's liability and that the county was not responsible for the arrestee's medical expenses until the arrestee was placed in the sheriff's actual physical custody.

In reaching its conclusion, the court in *OSF Healthcare Systems* looked to the 1990 amendment to section 17 of the County Jail Act which reinserted the "arresting authority" language into that act. As previously noted,[4] that language was originally enacted as part of the County Jail Act in 1984 but was repealed six months later until its reenactment effective in 1990. The court interpreted the import of the reenactment of the "arresting authority" language and the legislative debate preceding its reenactment as requiring actual physical custody by the county before the county's obligation to pay medical costs was triggered.

We are not persuaded by the statutory construction given in *OSF Healthcare Systems* to section 17 of the County Jail Act. A fundamental rule of statutory construction provides that the function of the court when interpreting a statute is to ascertain and give effect to the intent of the legislature (*State v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168), guided by the statute's plain and ordinary meaning (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 610 N.E.2d 1250). When determining legislative intent, consideration must be given to the entire statute, its nature, object, and purpose to be attained, and the evil to be remedied. (*Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358, 521 N.E.2d 251.) Courts presume that in enacting statu-

---

agreed at trial that technical custody based on the formal presentation of charges would make the County liable for the arrestees' medical expenses. At the time this case was argued before the trial court, *OSF Healthcare Systems v. County of Lee* (1993), 239 Ill. App. 3d 824, 607 N.E.2d 699, had not been decided and case law prior to *OSF Healthcare Systems* held the county liable for medical expenses once the arrestee was charged regardless of whether the sheriff had actual physical custody of the arrestee. We do not believe that at this juncture we should preclude the modification of the County's position in its appellate argument in view of the fact that *OSF Healthcare Systems* had not been decided at the time the case was argued in the trial court.

[4]See footnote 1 *supra*.

tory language the legislature acts rationally and with full knowledge both of all previous enactments and of judicial construction of prior statutes. (*In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 604 N.E.2d 929; *In re Marriage of Hawking* (1992), 240 Ill. App. 3d 419, 608 N.E.2d 327.) By reenactment of a prior statute, the legislature is presumed to have intended to adopt any clearly established judicial interpretation of that prior legislation. *People v. Palmer* (1984), 104 Ill. 2d 340, 472 N.E.2d 795.

Guided by these statutory construction principles, we believe that by reenacting the "arresting authority" provision in the County Jail Act the legislature intended to adopt the judicial interpretations espoused in *St. Mary of Nazareth Hospital, Sisters of the Third Order of St. Francis,* and *Rockford Memorial Hospital.* One also must presume that the legislature's initial adoption of the "arresting authority" language effective January 1, 1984, was a codification of the holding in *St. Mary of Nazareth Hospital.* A review of the legislative debate in 1983 relative to passage of that act does not lead to a contrary conclusion nor was there any expressed legislative intent to reject *St. Mary of Nazareth Hospital* and to distinguish technical from actual physical custody by the sheriff. See 83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 61.[5]

As noted above, on July 1, 1984, when "An Act in relation to jails and jailers" was repealed, it was replaced with "An Act in relation to prisoners and jails." (Pub. Act 83—1073, § 1—25, eff. July 1, 1984.) Deleted from the new act was any reference to "arresting authority." According to the legislative debate, the purpose of Public Act 83—1073 was to recodify chapter 75 and to make several changes, none of which concerned the allocation of medical expenses of arrestees. (See 83d Ill. Gen. Assem., House Proceedings, May 11, 1983, at 140, June 29, 1983, at 72 (statements of Representative Capparelli); see also 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 426, November 1, 1983, at 15 (statements of Senator Egan).) There was no expressed intention to eliminate the "arresting authority" liability provision

---

[5]Representative Saltsman stated:
"It will provide that an arresting authority is responsible for medical expenses relating to the arrestee until placed in the custody of the sheriff. However, the arresting authority shall not be so responsible if the arrest was made pursuant to the request by the sheriff."
See also 83d Ill. Gen. Assem., Senate Proceedings, June 20, 1983, at 140 (statements of Senator Bloom: "What this does is basically say, no, your sheriffs and your county are ... are not responsible for all incurred expenses, rather the medical expenses; it's limited to medical costs. However, after the sheriff has taken custody, then, the county does pick up the tab").

from the County Jail Act nor could such an intention be implied since the identical liability provision in the County Department of Corrections Act was not similarly repealed. Thus the omission of the "arresting authority" language in Public Act 83—1073 would seemingly be an elimination that the legislature did not intend.

This conclusion is further supported by the legislature's subsequent passage of Public Act 85—744, effective January 1, 1988, which amended section 17 of the County Jail Act by allowing the arresting authority to seek reimbursement from the prisoner for medical or hospital services furnished to him to the extent that the prisoner is reasonably able to pay. If the arresting authority were not liable for the medical expenses incurred on behalf of the arrestee, the enactment of this latter provision would be superfluous.

When the "arresting authority" language was reinserted in section 17 of the County Jail Act pursuant to Public Act 86—794, effective January 1, 1990, the legislative debate was similar to the debate concerning the original enactment. The stated purpose of the bill was to make "the arresting authority responsible for any incurred medical expenses relating to the arrestee until he is placed in the custody of the sheriff ***. *** [U]ntil the sheriff accepts them." Again, no distinction was made with respect to technical custody, based upon the charging of the arrestee, or actual physical custody either in the debate or in the expressed language of the amendment. See Pub. Act 86—794, § 1, eff. January 1, 1990; see also 86th Ill. Gen. Assem., House Proceedings, May 9, 1989, at 31 (statements of Representative Giorgi).

Moreover, at the time of the reenactment of the "arresting authority" language in the County Jail Act, the legislature had reason to know of *Rockford Memorial Hospital*'s judicial interpretation of the identical language found in the County Department of Corrections Act. That case was consistent with the prior case law of *St. Mary of Nazareth Hospital* and *Sisters of the Third Order of St. Francis* and the holdings therein that the charging event controlled the issue of custody for purposes of imposing liability for arrestee medical costs. There is no reason to presume that the legislature intended to change the meaning of "custody" when the legislature reenacted the original version, verbatim, as it previously existed in the predecessor of the County Jail Act and as it continued to exist in the County Department of Corrections Act and its successor County Department of Corrections Law.

We further note that *OSF Healthcare Systems* is not controlling in the instant case because the statute involved therein, while bearing language in common with the statute involved in the instant

case, does not have the same legislative history and thus requires a distinct statutory construction. As noted above, *OSF Healthcare Systems* was governed by section 17 of the County Jail Act. The County Jail Act applies "except when otherwise provided in the 'County Department of Corrections Act.'" (Ill. Rev. Stat. 1987, ch. 75, par. 102.)[6] The latter statutory scheme applies to counties having more than 1 million inhabitants (Ill. Rev. Stat. 1987, ch. 125, par. 202 (recodified at Ill. Rev. Stat. 1989, ch. 34, par. 3—15002 (now at 55 ILCS 5/3—15002 (West 1992)))); and Cook County has a population that exceeds 1 million inhabitants. (See County and City Data Book, United States Department of Commerce 143—33 (1994).) The "arresting authority" language found in section 16 of the County Department of Corrections Act was enacted effective January 1, 1984, and was judicially interpreted in 1988 in *Rockford Memorial Hospital,* and in accordance with *St. Mary of Nazareth Hospital* and *Sisters of the Third Order of St. Francis,* to mean that the charging event was the catalyst that changed custody. Section 16 has not been amended or repealed since its original enactment. Thus, even if there would be a new legislative history and interpretation for section 17 of the County Jail Act, this would not impact our continued interpretation of section 16 of the County Department of Corrections Act and its successor County Department of Corrections Law, which requires us to give the word "custody" the broader meaning that includes technical or physical custody. We therefore hold that custody of the sheriff occurs when the sheriff has technical or physical custody of the arrestee.

■ In the instant case, the County argues that, even assuming technical custody by the sheriff creates liability upon the County for the arrestee's medical expenses, the trial court impermissibly expanded the concept of technical custody to include medical services rendered on the same calendar day that the arrestee was charged even though those services were completed prior to the arrestee being charged.

As discussed above, *Sisters of the Third Order of St. Francis* and *Rockford Memorial Hospital* held that the charging of the patient-arrestee was the catalyst which resulted in the liability of the county

---

[6]The County Department of Corrections Act and its successor County Department of Corrections Law create the Department of Corrections, which under the sheriff's direction has charge of the county jail, municipal houses of correction within the county, and any penal, corrections or diagnostic facility operated by the county jail or municipal houses of correction. Ill. Rev. Stat. 1987, ch. 125, par. 203 (recodified at Ill. Rev. Stat. 1989, ch. 34, par. 3—15003 (now at 55 ILCS 5/3—15002 (West 1992))).

for incurred medical expenses. In both cases, the arrestees received medical care while in the physical custody of the arresting authority and were not charged until after they had been released from the hospital. The arresting authorities were held liable for the arrestees' medical expenses. Thus, in accordance with those cases, to the extent that the trial judge in the instant case held the County liable for medical services provided and completed on the date of but before the arrestee was charged with a crime, error was committed. The County is not liable for medical services provided to the arrestee prior to the arrestee being charged with a crime. Since the information in the record does not differentiate between services provided and completed on the date of but before the arrestees were charged from those provided after the arrestees were charged, the matter must be remanded for this determination and reallocation of liability.

■ The County next contends that the trial court committed error by applying the concept of technical custody to hold it liable for medical services provided to the arrestee before but on the same day that the arrestee bonded out of the custody of the arresting authority. In this factual scenario the arrestee was charged with a crime without appearing in court and without having been transferred to the sheriff's physical custody before release. The County does not argue that the arrestee's bonding out at a police station pursuant to procedures established by Supreme Court Rules 526, 527 and 528 (113 Ill. 2d Rules 526, 527, 528) should be treated differently from the arrestee's bonding out in open court before a judge. Rather, the County's argument centers on when the bonding out occurred in relation to when the medical services were provided and completed. It is the County's contention that if the bonding out occurred after the medical services were provided, even if both events occurred on the same day, the arresting authority would be liable for those medical services.

Persons who bond out at a police station do so pursuant to court order, and it is this act that brings the arrestee within the technical custody of the sheriff. The parties in the instant appeal do not dispute this fact. Thus, in view of our holding above, and our interpretation of *Sisters of the Third Order of St. Francis* and *Rockford Memorial Hospital*, the County is not liable for medical services provided to arrestees on the day of but prior to their bond hearings since the County did not have technical custody of those arrestees at the time medical services were provided to them. To the extent that the trial court's order held the County liable for these medical expenses, which must be determined on remand, the order must be reversed.

■ The County's final contention is that the trial court erroneously held the County liable for medical expenses of juvenile detainees prior to the time the detainees were placed into the physical custody of the Cook County juvenile detention center. The County argues that juvenile detainees are not arrestees for purposes of either the County Department of Corrections Act or the County Jail Act and because the Juvenile Court Act of 1987 specifically provides that the taking of a juvenile into custody by a law enforcement officer is not considered an arrest. See Ill. Rev. Stat. 1987, ch. 37, par. 802—5(3) (now at 705 ILCS 405/2—5(3) (West 1992) (abused, neglected or dependent minors: "The taking of a minor into temporary custody under this Section is not an arrest nor does it constitute a police record")). See also Ill. Rev. Stat. 1987, ch. 37, pars. 803—4(g), 803—7(3) (minors requiring authoritative intervention); 804—4(3) (addicted minors); 805—5(3) (delinquent minors) (now at 705 ILCS 405/3—4(g), 3—7(3), 4—4(3), 5—5(3) (West 1992), respectively).

The City cites to the same statutory provisions and argues in its cross-appeal that it, too, is not liable for the medical expenses of juvenile detainees. However, the City's argument extends to all expenses whether they were incurred before or after the County took custody of the detainees. The City argues that neither the County Department of Corrections Act (and its successor the County Department of Corrections Law) nor the County Jail Act is applicable to juvenile detainees since they are not arrestees within the language of either statutory scheme.

It appears from the record that the trial court did not distinguish juvenile detainees from adult arrestees. Both categories of patients were treated identically such that the key factor in the determination of liability was the date upon which the patient came within the actual or technical custody of the sheriff. The County was held liable for all patients who received medical treatment on or after the date custody was transferred to it, either physically or technically, including those medical services completed on the day of but prior to the time of transfer. Likewise the trial court held the City liable for all costs of treatment rendered prior to the calendar date upon which the transfer of custody occurred.

The County Department of Corrections Act specifically exempts from its provisions "minors subject to proceedings under the Juvenile Court Act." (Ill. Rev. Stat. 1987, ch. 125, par. 203(b) (subsequently codified at Ill. Rev. Stat. 1989, ch. 34, par. 3—15003 (now at 55 ILCS 5/3—15003 (West 1992))).) The County Jail Act states that the "Sheriff of each county in this State shall be the warden of the jail of the county, and have the custody of all prisoners in the jail, except when otherwise provided by the 'County Department of Corrections

Act.' " (Ill. Rev. Stat. 1987, ch. 75, par. 102.) As noted above, the County Department of Corrections Act applies to Cook County so that the exemption in that Act of minors subject to the Juvenile Court Act applies. Thus, juvenile detainees are not arrestees under the County Department of Corrections Act, its successor County Department of Corrections Law, or the County Jail Act. To the extent that the trial court relied on these provisions to allocate to the City costs of medical services provided by the plaintiff to the juvenile detainees, the court erred.

The fact that medical expenses for juvenile detainees are not covered by the County Jail Act or the County Department of Corrections Act does not leave the plaintiff without a remedy, however. Section 6—7 of the Juvenile Court Act of 1987 imposes upon all counties the obligation to appropriate funds "for the care and support of minors" who are subject to that Act. (Ill. Rev. Stat. 1987, ch. 37, par. 806—7(1) (now at 705 ILCS 405/6—7(1) (West 1992)).) When the health or condition of any minor requires it, minors may be treated at a hospital or other institution and "the court may order the county to pay an amount for such treatment from the fund established pursuant to Section 6—7." (Ill. Rev. Stat. 1989, ch. 37, par. 806—8(3) (now at 705 ILCS 405/6—8(3) (West 1992)).) There are no statutory or municipal ordinance provisions obligating the City for medical expenses incurred on behalf of juvenile detainees, and the City police cannot obligate the City to pay for medical aid by arranging for the medical services. See 93 Att'y Gen. Op. 231, 233 (1961), cited in *St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511, 331 N.E.2d 142.

The juvenile detainees in the instant case were detained by the Chicago police and were awaiting the filing of charges against them pursuant to the filing of a petition for adjudication of wardship. The police were in the process of transferring the juveniles to the juvenile detention center, but before the transfer could occur, police personnel were required by County policy[7] to obtain medical attention and/or hospital clearance for those juveniles who were injured, seriously ill, in possession of drugs, under the influence of drugs or narcotics or who displayed bizarre behavior before they were transported to the juvenile center. While utilization of Cook County Hospital facilities was encouraged, County policy authorized medical

---

[7]This policy was established by the director of intake for the Cook County Juvenile Temporary Detention Center. The directive was issued on stationery bearing the name of the president of the Cook County board of commissioners and the superintendent of the detention center.

clearance from any hospital. In addition to this County policy was an order entered by the presiding judge of the juvenile division of the circuit court of Cook County, authorizing the referring police department to consent to medical examination and treatment of any child in their custody where the parents or guardian of the minor was unavailable.

In the instant case, all of the juvenile detainees were charged pursuant to petitions for adjudication of wardship. In accordance with County policy, the police brought the detainees to the plaintiff hospital for medical clearance and/or other treatment before transporting them to the County juvenile authorities. The police were acting pursuant to a County directive to obtain a medical clearance for those detainees in need of medical assistance and also were authorized by court order to consent to the medical examination of them. While the Juvenile Court Act provides that treatment first should be sought from a public hospital, institution or agency, the County should not be excused from liability because the City police obtained medical services for juvenile detainees from the plaintiff hospital in view of the fact that a County directive authorized medical clearances from hospitals other than Cook County Hospital. For these reasons, the County is liable for all juvenile detainees' medical expenses whether they were incurred before the detainees were placed in the actual physical custody of the Cook County juvenile detention center or whether they were incurred before or after the date upon which the petitions for adjudication for wardship were filed. Accordingly, the trial court is affirmed with respect to its refusal to limit the County's liability to instances of actual physical custody of the juvenile detainees but is reversed with respect to its order which made the City liable for those expenses incurred prior to the calendar date upon which the petitions for adjudication for wardship were filed.

■ In its cross-appeal, the City further argues that the trial court committed error in holding it liable for medical expenses of persons arrested on warrants that were not requested by the sheriff. The City argues that since a warrant is issued only after criminal charges have been presented in court, the charging event which is the catalyst for the transfer of custody occurred before the warrant was issued and thus the County and not the City should be liable for any medical expenses incurred on behalf of the arrestee after issuance of the warrant.

The "arresting authority" provision provides that the arresting authority shall not be liable for the medical expenses of the arrestee if the arrest was made pursuant to a request by the sheriff. (See Ill.

Rev. Stat. 1987, ch. 125, par. 216 (now at 55 ILCS 5/3—15016 (West 1992)).) In an attempt to discourage informal arrangements between the sheriff and the arresting authorities, which would be difficult to prove, the trial court interpreted this language to mean that the sheriff had to request the issuance of the arrest warrant in order for the County to be liable for medical expenses incurred from the time of the arrest. As the trial court noted, when the arresting authority requests the issuance of an arrest warrant, it is not doing so on behalf of the sheriff or at the sheriff's request.

The City's contention that the charging event, which transfers technical custody to the County, occurred at the time the arrest warrant was issued is without merit. Although the City is correct that the arrest warrant is issued upon presentment to the court of a complaint "charging that an offense has been committed" (Ill. Rev. Stat. 1987, ch. 38, par. 107—9(a) (now, as amended, 725 ILCS 5/107—9(a) (West 1992))), that charging event does not initiate the custodial obligations of the county sheriff. Rather, the charging that occurs prior to the issuance of an arrest warrant is a constitutional prerequisite to the arrest or seizure of the person. The purpose of the arrest is to take the person into custody for the further purpose of holding or detaining him to answer a criminal charge. (*People v. Mirbelle* (1934), 276 Ill. App. 533, 540.) The charging event for purposes of initiating the custodial obligations of the sheriff occurs when the person is brought before the judge, informed of the charges against him, and given his rights under the law to bail. (See Ill. Rev. Stat. 1987, ch. 38, par. 109—1 (now, as amended, at 725 ILCS 5/109—1 (West 1992) ("A person arrested with or without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge *** and a charge shall be filed")).)[8] Until this hearing is held, or unless the arrestee is hospitalized and unable to appear in court so that the signing of the complaint acts as the charging event (see *St. Mary of Nazareth Hospital*, 29 Ill. App. 3d 511, 331 N.E.2d 142), custody of the arrestee remains with the arresting authority, and the arresting authority would be liable for any medical expenses incurred on behalf of the arrestee. Thus, the trial court is affirmed with respect to its ruling holding the City liable for medical expenses incurred on behalf of arrestees arrested pursuant to arrest warrants who were not charged until after their release from the hospital.

---

[8]As noted earlier, arrestees charged with certain crimes can bond out at police stations without appearing in court before a judge. (See 113 Ill. 2d Rules 526, 527, 528.) In accordance with our holding, the County has no custodial responsibilities to these arrestees.

■ Finally, the City argues that the trial court erred in denying its motion to impose liability upon the County for any medical services provided where the County was unable to produce records showing the dates the arrestees were charged or whether the arrest was made pursuant to a warrant. The City argues that the County is presumptively liable for all expenses of persons held in custody and is therefore liable unless it can show that the persons were not transferred to County custody before the expenses were incurred. The City further contends that it should not be penalized where the County, which had control over the records, could not produce those records.

As the County correctly argues, the clerks of the circuit court, who are the official record keepers of court documents, are not county officials; they are nonjudicial members of the judicial branch of State government. (See *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 507 N.E.2d 482.) A receipt by the clerk of the circuit court is not a receipt by the county. (*Drury v. County of McLean* (1982), 89 Ill. 2d 417, 433 N.E.2d 666.) Thus, in the case at bar, the County of Cook should not be held liable for the circuit court clerk's inability to produce certain of the criminal files. Moreover, the statute provides that the arresting authority "shall be responsible" for any incurred medical expenses relating to the arrestee until such time as the arrestee is placed in the custody of the sheriff. (See Ill. Rev. Stat. 1987, ch. 125, par. 216.) Since the City, as arresting authority, took the arrestees into custody and obtained medical treatment for them, the burden should be placed on the City to prove when custody was transferred to the County, if in fact custody was transferred. As the trial court correctly held, the County's failure or inability to disprove custody should not require the imposition of liability upon the County where there was no contumacious refusal by the County to produce the requested records.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

COUSINS, P.J., and McNULTY, J., concur.